STEVENS & LEE, P.C.
485 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:  212-319-8500
Facsimile:  212-319-8505
Nicholas F. Kajon
Constantine D. Pourakis
Andreas D. Milliaressis

*Counsel for the Petitioners Rachelle Frisby and John Johnston,
in their capacity as the Joint Provisional Liquidators
and Proposed Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 15 |
| PB LIFE AND ANNUITY CO., LTD.,[1] | Case No. |
| Debtor in Foreign Proceeding. | |

**VERIFIED PETITION OF PB LIFE AND ANNUITY CO., LTD.
(IN PROVISIONAL LIQUIDATION) AND MOTION OF THE
JOINT PROVISIONAL LIQUIDATORS FOR (A) RECOGNITION OF THE BERMUDA
PROCEEDING AS A FOREIGN MAIN PROCEEDING OR, IN THE ALTERNATIVE,
AS A FOREIGN NONMAIN PROCEEDING AND (B) CERTAIN RELATED RELIEF**

Rachelle Frisby and John Johnston of Deloitte Ltd. ("Deloitte"), in their capacities as the

joint provisional liquidators and authorized foreign representatives ("Petitioners" or "JPLs") for

PB Life and Annuity Co., Ltd. ("Debtor" or "PBLA"), in provisional liquidation currently

pending before the Supreme Court of Bermuda (the "Bermuda Court"), Companies (Winding

Up) Commercial Court, 2020: No. 306 (the "Bermuda Proceeding"), by and through the

undersigned counsel to the JPLs on behalf of the Debtor, hereby submit this *Verified Petition of*

---

[1] PB Life and Annuity Co., Ltd., a foreign Debtor, is a Bermuda limited company with a registered address in
Bermuda of Ocorian Services (Bermuda) Limited, Victoria Place, 5th Floor, 31 Victoria Street, Hamilton, HM 10,
Bermuda.

*PB Life and Annuity Co., Ltd. (in Provisional Liquidation) and Motion of the Joint Provisional
Liquidators for (A) Recognition of the Bermuda Proceeding as a Foreign Main Proceeding or, in
the Alternative, as a Foreign Nonmain Proceeding, and (B) Certain Related Relief* in furtherance
of the Debtor's Form of Voluntary Petition [ECF No. 1] filed concurrently herewith (together
with Debtor's Form of Voluntary Petition, the "Verified Petition") pursuant to sections 105,
1515-1517 and 1519-1522 of title 11 of the United States Code (the "Bankruptcy Code") for
(i) entry of an order, substantially in the form attached hereto as Exhibit A (the "Recognition
Order") after notice and a hearing (the "Recognition Hearing"), granting recognition of the
Bermuda Proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain
proceeding, and certain related relief.

The Petitioners respectfully refer the Court to the *Memorandum of Law in Support of the
Verified Petition* (the "Memorandum of Law") [ECF No. 3], and the *Declaration of Rachelle
Frisby Pursuant to 28 U.S.C. § 1746 and Statements and Lists Required by Bankruptcy
Rule 1007(a)(4)* (the "Frisby Declaration") [ECF No. 4], each of which is incorporated herein by
reference.  In further support, the Petitioners respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1.   On September 18, 2020, the Bermuda Monetary Authority presented a petition to
the Supreme Court of Bermuda (the "Bermuda Court") to, *inter alia,* wind up the Debtor and to
appoint Rachelle Frisby and John Johnston of Deloitte as provisional liquidators of the Debtor.
The Bermuda Court has granted the Bermuda Monetary Authority's request to appoint
provisional liquidators and, by order dated September 25, 2020 (the "Bermuda Order"),

2

Petitioners were appointed as JPLs and duly authorized foreign representatives of the Debtor. [2]

On September 25, 2020, the Bermuda Court also appointed the Petitioners as JPLs and duly

authorized foreign representatives over two related entities, Omnia Ltd. ("Omnia") and Northstar

Financial Services (Bermuda) Ltd. ("Northstar", together with Omnia and the Debtor, the

"Companies") for which the Petitioners are simultaneously seeking chapter 15 relief. As set forth

in greater detail below, the JPLs need relief from this court, *inter alia*, to (1) assist in the

administration of hundreds of millions of dollars of assets that the Companies' former principal

caused to be channeled into illiquid investments issued by his affiliates as well as other United

States-based companies, and (2) obtain a stay of multiple litigations that would otherwise deplete

scarce resources to the detriment of policyholders and other creditors.

2.      By the Bermuda Order, the Bermuda Court has granted the JPLs the broad

authority to undertake various actions with respect to the Debtor, including the authority:

> 4.1 to continue the business of the [Debtor] under the supervision of this Court so far as is
> necessary to preserve the value of the [Debtor];

> 4.2 to review, secure, take possession of the books, papers, writings, records, bank
> accounts and any other property or assets (of whatever nature) to which the [Debtor]
> is or appears to be entitled, and to take whatever steps necessary to effect such
> possession including, where necessary, Court actions to obtain such property or assets
> to bring them under the control of the JPLs. For the avoidance of doubt, this includes
> the power for the JPLs to be able to see, review, secure, take possession of and copy
> any books and records (of whatever nature) relating to the [Debtor's] management,
> accounts and audit located in the offices of the [Debtor's] Managers, Principal
> Representative and/or auditors and accountant both in this jurisdiction and in any other
> jurisdiction;

> 4.3 to retain and employ barristers, attorneys and/or such agents or professional persons
> as the JPLs deem fit (in Bermuda, the United States, and elsewhere as the JPLs deem
> appropriate) for the purpose of advising and assisting in the execution of their powers;

---

[2] A true and correct copy of the Bermuda Order is annexed as Exhibit A to the Frisby Declaration.

3

4.4. to render and pay invoices out of the assets of the [Debtor] for their own remuneration at their usual and customary rates (and this shall include all costs, charges and expenses of their attorneys and all other agents, managers, accountants or other persons that the JPLs may employ); and all expenses and disbursements in connection with the running, administration and management of the [Debtor's] records and affairs and offices;

4.5 if deemed necessary and/or appropriate to seek the assistance of the courts in the United States or elsewhere as deemed necessary and appropriate to secure the assets of the [Debtor] in that jurisdiction, including, without limiting the foregoing, the assistance of the United States Bankruptcy Court under the provisions of the US Bankruptcy Code, Chapter 15;

4.6 to take control of and operate the existing bank accounts of the [Debtor] in Bermuda, the United States, or elsewhere, and no other person or entity shall have any authority, power or control over any of the [Debtor's] accounts, including without limitation the [Debtor's] officers, directors, shareholders, affiliates or agents; and to open and operate any bank accounts in the name of the JPLs or the [Debtor] as may be necessary; which powers, for the avoidance of doubt, shall include the ability to amend the list of authorized signatories for the operation of any such bank accounts;

4.7 to do all such things as may be necessary or expedient for the protection of the [Debtor's] property or assets, including but not limited to selling or otherwise disposing of the property of the [Debtor] by any means appropriate;

4.8 to conduct such investigations and obtain such information so far as it is necessary to locate, protect, secure, take possession of, collect and get in the assets, and determine the liabilities, of the [Debtor], including but not limited to securing the shares in and controlling the subsidiaries of the [Debtor];

4.9 to investigate the assets and affairs of the [Debtor] and the circumstances which gave rise to its insolvency, including, without limitation, to require the [Debtor] to make a forensic image of the [Debtor's] and its subsidiaries' management information systems including records stored on their computers. Such forensic image is to be stored on behalf of the [Debtor] and appropriately safeguarded to protect the integrity of the data (including all metadata) and shall only be accessed with the written consent of the JPLs or as directed by this Honourable Court. For the avoidance of doubt, the books, records and documents of the [Debtor] include:

4.9.1 emails exchanged and other correspondence between the [Debtor] and its auditors, and the [Debtor] and other third parties; and

4.9.2.   documents and information provided by the [Debtor] to its auditors and provided by the auditors to the [Debtor] in relation to the audit work;

. . .

4

4.12. to carry out the following where deemed appropriate:

    4.12.1. the payment of payroll, payroll taxes, employment benefits and expenses;

    4.12.2. the employment of professionals used in the ordinary course of business;

    4.12.3. the incurrence of indebtedness or borrowed money, whether pursuant to agreements with suppliers or pursuant to loan arrangements with financing institutions and/or to grant security in respect of same and/or to guarantee such indebtedness or borrowed money of affiliates;

    4.12.4. the sale or other disposition of any business operation, subsidiary, division or other significant asset of the [Debtor];

    4.12.5. the transfer, novation or commutation of any contracts of insurance or reinsurance wo [sic] which the [Debtor] is party;

4.13. to enter into settlements or arrangements with any creditors and any debtors of the [Debtor] without further order or other approval or formality including, but not limited to, terminating, completing or effect any contracts or transactions relating to the business of the [Debtor];

. . .

4.15. to consider any legal or arbitration proceedings (including winding up proceedings) wherever situate in which the [Debtor] is a party; including, without limitation, the proceedings pending in the United States District Court for the Southern District of New York captioned *PB Life and Annuity Co. Ltd., v Universal Life Insurance Company No. 20-cv-2284 (LJL);* and the proceedings in the General Court of Justice, Superior Court Division for North Carolina, Wake County, captioned *Southland National Insurance in Rehabilitation and others v. Greg E. Lindberg, Private Bankers Life and Annuity Co., Ltd and others No. 19CV013093*; and to give all instructions in connection therewith and take such action as may be thought necessary to continue to prosecute or defend such proceedings or to apply for a stay of such proceedings;

4.16 to consider and if thought advisable to commence such actions as may be necessary in Bermuda or elsewhere to protect, recover or obtain assets or money belonging to the [Debtor];

. . .

Bermuda Order, ¶¶ 4.1-4.9, 4.12, 4.13, 4.15 and 4.16.

3.     On the date hereof (the "Petition Date"), the JPLs commenced the case (the

"Chapter 15 Case") by filing the Verified Petition for relief under chapter 15 of the Bankruptcy

Code.  The JPLs seek recognition of the Bermuda Proceeding as a foreign main proceeding or, in

the alternative, as a foreign nonmain proceeding under section 1517 of the Bankruptcy Code.

4.     Additional information regarding the Debtor and the JPLs, and additional

information relevant to the Chapter 15 Case and the Verified Petition, is set forth in the

Memorandum of Law and the Frisby Declaration.

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, sections 109 and 1501 of the Bankruptcy Code and the *Amended Standing Order of

Reference* from the United States District Court for the Southern District of New York, dated as

of January 31, 2012, Reference M-431, *In re Standing Order of Reference Re:  Title 11*,

12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).

6.     The Chapter 15 Case has been properly commenced pursuant to section 1504 of

the Bankruptcy Code by the filing of the Verified Petition under section 1515 of the Bankruptcy

Code.  Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy

Code have been designated core matters under 28 U.S.C. § 157(b)(2)(P).

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1410.

8.     The statutory predicates for the relief requested herein are sections 105, 362,

1519, and 1521 of the Bankruptcy Code.

## BACKGROUND OF THE DEBTOR

9.     Debtor was incorporated in Bermuda on April 17, 2017 as Private Bankers Life

and Annuity Co. Ltd., and on April 12, 2019 changed its name to PB Life and Annuity Co., Ltd.

6

10.     The Debtor's registered office is located at Ocorian Services (Bermuda) Limited, Victoria Place, 5th Floor, 31 Victoria Street, Hamilton, HM 10, Bermuda.

11.     On April 17, 2019 the Debtor was registered as a long-term insurer under the Bermuda Insurance Act of 1978 ("Insurance Act") to provide insurance and annuity products and on May 15, 2017 the Debtor was licensed as a Class E insurer.

12.     Debtor's Bermuda Corporate Registration Number is 52514.

13.     The common shares of the Debtor acquired in 2017 are owned by PBX Bermuda Holdings, Ltd. registered in Bermuda. PBX Bermuda Holdings, Ltd. is wholly owned by PBX Holdings, LLC, a North Carolina limited liability company which is owned and controlled by Greg Lindberg ("Mr. Lindberg").

14.     Mr. Lindberg is the ultimate beneficial owner of three related entities that are licensed by the Bermuda Monetary Authority: (i) the Debtor; (ii) Omnia; and (iii) Northstar.[3]

15.     Northstar was acquired by Mr. Lindberg in 2018 and Omnia was acquired by Mr. Lindberg in 2017.

16.     PBLA's principal assets are located in this District. These assets consist of hundreds of millions of dollars in investments held in two trust accounts at The Bank of New York Mellon.

17.     PBLA and Omnia are both owned 100% by PBX Bermuda Holdings, Ltd. PBX Bermuda Holdings, Ltd. is in turn owned 100% by PBX Holdings, LLC. Greg Lindberg holds a 100% ownership interest in PBX Holdings, LLC.

---

[3] Omnia and Northstar will also be filing petitions under Chapter 15 of the Bankruptcy Code.

7

18.     As for Northstar, Mr. Lindberg holds a 100% ownership interest in BMX

Holdings, LLC, which holds a 100% ownership interest in BMX Bermuda Holdings, Ltd., which

holds a 100% ownership interest in Northstar.   Ultimately, Greg Lindberg owns and controls

PBLA, Omnia and Northstar, so that the Companies are affiliates as defined under section 101(2)

of the Bankruptcy Code.   Northstar and Omnia are each filing Chapter 15 petitions in this

District as cases related to PBLA pursuant to 28 U.S.C. §§ 1408(2) and 1410(3).

19.     On or about October 3, 2018, the Bermuda Monetary Authority was notified that

the United States Department of Justice had launched an investigation into Mr. Lindberg.  On

March 18, 2019 Mr. Lindberg was indicted on charges of attempting to bribe the North Carolina

Department of Insurance Commissioner.

20.     Mr. Lindberg was tried in February 2020 and on March 5, 2020, a federal jury

convicted Mr. Lindberg of conspiracy to commit honest services wire fraud and bribery

concerning programs receiving federal funds.

21.     The Debtor has had non-compliance and liquidity issues.  Shortly after the change

of control of the Companies, there was a reallocation of assets, with significant assets belonging

to the Companies being invested in equity and debt instruments, mainly in special purpose

vehicle structures, under the control of Mr. Lindberg in the United States, which now appear to

be illiquid.  The JPLs require relief from this Court to assist in maximizing the value of these

illiquid assets of the Debtor, and, by the simultaneously filed Chapter 15 Petitions of Omnia and

Northstar, the assets of Omnia and Northstar, most of which are invested in multiple companies

organized under the laws of the United States, including over $500 million invested in Lindberg

affiliates.

8

22.     There are also two substantial pending litigations involving the Debtor directly, which, upon information and belief, may impact the assets of Northstar and Omnia.  The two pending matters are: (i) the SDNY Action and ULICO Appeal (both defined herein), and (ii) a North Carolina State Court civil action entitled Southland National Insurance Corporation in Rehabilitation, Bankers Life Insurance Company, in Rehabilitation, Colorado Bankers Life Insurance Company, in Rehabilitation, and Southland National Reinsurance Corporation, in Rehabilitation v. Greg E. Lindberg, Academy Association, Inc., Edwards Mill Asset Management, LLC, and Private Bankers Life and Annuity Co., Ltd. a/k/a PB Life and Annuity Company, Ltd., *Gen. Court of Justice, Superior Court Division (Wake County), No. 19 CVS 013093* (the "NC Insurance Rehabilitation Action").  Counsel in these matters will receive notice of these proceedings and are included as Notice Parties, defined below.

23. PBLA and Universal Life Insurance Company ("ULICO") executed a Coinsurance Reinsurance Agreement on or about June 30, 2017 (the "Co-Re Agreement"). PBLA through the Co-Re Agreement agreed to reinsure liabilities with respect to certain insurance policies issued by ULICO in accordance with the terms of the Co-Re Agreement.  The Co-Re Agreement also required that its parties enter into a Reinsurance Trust Agreement (the "RT Agreement") for the establishment of a Reinsurance Trust Account, which pursuant to the Co-Re Agreement must include additional specific terms relating to financial reserves and the Insurance Code of Puerto Rico.  The parties executed a RT Agreement.  The Co-Re Agreement includes an agreement to present and resolve disputes between its parties in arbitration; the RT Agreement contains no such agreement.  ULICO by writing dated January 27, 2020 demanded arbitration, claiming among other things that PBLA contributed non-compliant and insufficient assets in its performance of the RT Agreement.

9

24.     PBLA denied ULICO's claims, PBLA denied that the arbitration agreement in the
Co-Re Agreement applied, and a judicial proceeding was initiated in the United States District
Court for the Southern District of New York captioned PB Life and Annuity Co. Ltd. f/k/a
Private Bankers Life and Annuity Co., Ltd. v. Universal Life Insurance Company, *No. 1:20-cv-*
*02284-LJL* (the "SDNY Action").  The Court in the SDNY Action compelled the parties to
present and resolve their disputes pursuant to the arbitration agreement in the Co-Re Agreement.
*See* SDNY Action, Opinion & Order dated May 12, 2020, Docket No. 33.  An arbitration panel
was constituted, hearings were held, and attorneys for the parties made oral and written
submissions to a panel of arbitrators selected and constituted pursuant to the arbitration
agreement.  The arbitration panel by written award dated June 2, 2020 determined, *inter alia*,
that PBLA was required to pay into a segregated bank account identified by ULICO and defined
otherwise in the award $524,009,051.26 within ten (10) days, after which interest shall run at six
(6) percent per annum.  The arbitration remains open, including pursuant to the applicable rules
and the award dated June 2.  ULICO moved in the SDNY Action to confirm the award and
reduce it to a monetary judgment, PBLA sought to vacate the award and otherwise opposed
ULICO's attempt, the Court confirmed the arbitration award, and judgment issued.  *See* SDNY
Action, Opinion & Order dated July 30, 2020, Docket No. 47 (confirming award, denying PBLA
cross-motion); Final Judgment dated August 11, 2020, Docket No. 52.  PBLA timely filed a
Notice of Appeal as to the Opinions & Orders in the SDNY Action dated May 12 and July 30,
2020.  *See, e.g.,* SDNY Action, Notice of Appeal dated September 8, 2020, Docket No. 54.  The
appeal is pending with the United States Court of Appeals, Second Circuit (the "ULICO
Appeal").

10

25.     PBLA is named as one of five (5) defendants in the NC Insurance Rehabilitation
Action. The operative amended complaint is dated October 19, 2019, and subject to a sealing
order dated January 10, 2020 that redacts portions of it. Each plaintiff in the NC Insurance
Rehabilitation Action is an insurance or reinsurance company licensed in North Carolina;
affiliated with the Lindberg Entities; and subject to an Order of Rehabilitation (the
"Rehabilitation Order") entered pursuant to North Carolina law by the same Court where the NC
Insurance Rehabilitation Action is pending on June 27, 2019. As one consequence of the
Rehabilitation Order the defendants named in the NC Insurance Rehabilitation Action –
including PBLA before liquidation proceedings commenced – entered into written agreements
with the North Carolina Commissioner of Insurance. Those agreements sought to effectuate
through a series of agreed steps and transactions actions by and on behalf of defendants deemed
necessary by the Commissioner to remediate specific operating concerns affecting plaintiffs.
Plaintiffs in the NC Insurance Rehabilitation Action, beneficiaries of those agreements, among
their claims allege that defendants failed to perform them, that defendants never intended to do
so, and seek relief among their claims for specific performance of the agreements entered into as
a consequence of the Rehabilitation Order, unspecified money damages, punitive damages for
civil fraud, a permanent injunction including through it the compelled implementation of the
terms of the written agreements, any recoverable attorneys' fees and costs of prosecution, and
additional unspecified equitable relief. PBLA is seeking Chapter 15 recognition to ensure that
these assets are not used in a proceeding outside of the matters pending before the Bermuda
Court

26.     On October 19, 2020, the JPLs received a notice directed to Northstar from
SunTrust Investment Services, Inc. ("SunTrust") advising that SunTrust is subject to a FINRA

11

arbitration action styled *Gustavo Ortega Trujillo and Priscilla Illingworth Ashton v. SunTrust Investment Services, Inc.,* FINRA DR Arbitration No.20-02941 (the "SunTrust Arbitration"). SunTrust alleges that the claimants are seeking to hold SunTrust liable for Northstar's failure to return claimants' principal and accumulated interest upon maturity of their Northstar Global Advantage Select Contract No. GS100160.  The notice further advises that SunTrust will seek full indemnification from Northstar for any and all losses, claims, damages, liabilities, or expenses to which SunTrust may become subject in or as a result of the SunTrust Arbitration.

27.     Northstar is also subject to litigation pending in the Superior Court for the State of California, County of San Diego styled as *Oscar Manguy and Karla Meza v. Northstar Financial Services, Ltd.*, Case No. 37-2020-00016618-CU-CO-CTL for failure to return funds held in certificates of deposit on behalf of two individual investors (the "California Action").

28.     There is also an action pending in the Middle District of North Carolina brought by ULICO against Mr. Lindberg, individually. The stay of creditor actions to be sought in this case in no way stays this action, styled *Universal Life Insurance Company v. Greg E. Lindberg*, Case No. 1:20-cv-00681 (M.D.N.C.).

29.     Given Mr. Lindberg's reallocation of the assets of the Companies, it is possible that the SunTrust Arbitration and California Action may affect the assets of PBLA.

30.     The stay of creditor actions to be sought in this case would only apply to the Debtor and in no way would stay creditor actions against PBX Holdings, LLC, PBX Bermuda Holdings, Ltd., Mr. Lindberg, Global Growth or any non-debtor entity potentially affiliated with the Debtor.

31.     The Debtor is also cashflow insolvent and the JPLs are still in the process of establishing whether the Debtor is balance sheet solvent.

12

32.     Section 16(1) of the Bermuda Insurance Act requires an insurer to appoint an

auditor approved by the Bermuda Monetary Authority to audit its statutory financial statements.

33.     Section 15 of the Insurance Act requires an insurer to prepare accounts in respect

of its insurance business for each financial year ("Statutory Financial Statements").  Section

17(3) of the Act requires every insurer to file a copy of its Statutory Financial Statements in

accordance with the timelines set out in Section 15.

34.     The Debtor failed to file its Statutory Financial Statements and Statutory

Financial Returns pursuant to Sections 15, 15A, 17 and 18 of the Insurance Act for the years

ending December 31, 2018 and December 31, 2019.

35.     The Debtor failed to file its capital and solvency returns for the years ending

December 31, 2018 and December 31, 2019 under rule 6 of the Insurance (Prudential Standards)

(Class C, D and Class E Solvency Requirement) Rules 2011.

36.     The Debtor has failed to file its declarations of compliance for the years ending

December 31, 2018 and December 31, 2019 under section 15A of the Insurance Act.

37.     The Debtor has failed to file its declaration of compliance for the years ending

December 31, 2018 and December 31, 2019 under section 15A of the Insurance Act.

38.     As stated, *supra*, on March 18, 2019 Mr. Lindberg was indicted on charges of

attempting to bribe the North Carolina Department of Insurance Commissioner. Mr. Lindberg

was tried in February 2020 and on March 5, 2020, a federal jury convicted Mr. Lindberg of

conspiracy to commit honest services wire fraud and bribery concerning programs receiving

federal funds and he was later sentenced to serve over seven years in prison.  Mr. Lindberg was

incarcerated on October 20, 2020.

13

39.     In an official release following Mr. Lindberg's indictment, Assistant Attorney

General Benczowski commented that "[t]he indictment unsealed today outlines a brazen bribery

scheme in which Greg Lindberg and his coconspirators allegedly offered hundreds of thousands

of dollars in campaign contributions in exchange for official action that would benefit Lindberg's

business interests. . . Bribery of public officials at any level of government undermines

confidence in our political system.  The Criminal Division will use all the tools at our disposal—

including the assistance of law-abiding public officials—to relentlessly investigate and prosecute

corruption wherever we find it." *See* Department of Justice Office of Public Affairs release.[4]

40.     On April 15, 2019, due to the complications arising out of Mr. Lindberg's

indictment, the Bermuda Monetary Authority imposed significant conditions on the insurance

license of each of the Companies to assist in the enhanced supervision by the Bermuda Monetary

Authority.  The conditions require that the Companies seek the written approval of the Bermuda

Monetary Authority before engaging in certain actions.

41.     In March 2020, following the conviction of Mr. Lindberg, the Bermuda Monetary

Authority received an increasing number of complaints from Northstar's policyholders regarding

unpaid surrender requests and were advised of a legal action commenced against the Companies

in the United States.  The Bermuda Monetary Authority was increasingly concerned about the

solvency of the Companies.  In May 2020, the Bermuda Monetary Authority appointed Deloitte

as an independent party to conduct a review of the files held by the Bermuda Monetary Authority

in relation to each of the Companies' non-compliance and solvency issues and to report to the

Bermuda Monetary Authority on the nature and state of the financial position of the Companies.

---

[4] https://www.justice.gov/opa/pr/founder-and-chairman-multinational-investment-company-company-consultant-and-two-north

14

Deloitte provided its report, detailing the probable solvency issues of the Companies and, on
September 18, 2020, the Bermuda Monetary Authority filed a Petition on behalf of the Debtor
seeking, among other things, the winding up of the Debtor and appointment of the JPLs.

## RELIEF REQUESTED

42. By this Verified Petition, the JPLs seek entry of an order granting ancillary relief
in order to facilitate the liquidation of the Debtor. The JPLs seek recognition of the Bermuda
Proceeding in the United States, specifically:

(a) entry of the Recognition Order after notice and a hearing:[5]

(i) granting recognition of the Bermuda Proceeding as a foreign main
proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code and granting related
relief or, in the alternative, granting recognition of the Bermuda Proceeding as a foreign
nonmain proceeding pursuant to section 1517(b)(2) of the Bankruptcy Code and granting
related relief;

(ii) granting relief as of right upon recognition of the Bermuda
Proceeding as a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code
if the Bermuda Proceeding is recognized as a foreign main proceeding;

(iii) whether the Bermuda Proceeding is recognized as a foreign main
proceeding or foreign nonmain proceeding, granting additional relief under section 1521 of
the Bankruptcy Code including:

---

[5] The Petitioners have requested a date and time for the Recognition Hearing to consider entry of the Recognition
Order pursuant to the *Application by Joint Provisional Liquidators Rachelle Frisby and John Johnston for Order
(I) Scheduling Hearing on Verified Petition of PB Life and Annuity Co., Ltd. (in Provisional Liquidation) and
Motion for Recognition and Related Relief and (II) Specifying Form and Manner of Service of Notice* (the "Notice
Motion") [ECF No. 2], filed contemporaneously herewith.

(a)  staying the commencement or continuation of any actions or

proceedings concerning the Debtor's assets, rights, obligations or liabilities;

(b)  staying execution against the Debtor's assets;

(c)  suspending the right to transfer, encumber or otherwise dispose

of the Debtor's assets; and

(iv)  granting such further relief as the Court deems just and proper.

(b)Entry of an Order for Turnover of the following assets:

(i)  Any and all loans, debt instruments, preferred equity, and ordinary

equity invested in privately held, special purpose vehicles ("SPVs") and other related

companies located in the United States.

## BASIS FOR RELIEF REQUESTED

43.     For the reasons set forth in the Memorandum of Law, the JPLs request that the

Court enter the Recognition Order.  The JPLs meet the standards for obtaining the relief

requested herein and otherwise satisfy the statutory requirements for recognition and related

relief under chapter 15 of the Bankruptcy Code.

44.     The Bankruptcy Code authorizes the Court to enter a final order, after notice and

a hearing, recognizing a foreign proceeding if (i) such proceeding is a foreign main proceeding

or a foreign nonmain proceeding, (ii) the foreign representative applying for recognition is a

person or body and (iii) the application for recognition was properly filed in accordance with

section 1515 of the Bankruptcy Code.  11 U.S.C. § 1517(a).  The Bankruptcy Code further

provides that a proceeding shall be recognized as a foreign main proceeding if it is pending in the

country where the debtor has the center of its main interests ("COMI").  11 U.S.C. § 1517(b).

16

45.     For the reasons discussed in the Memorandum of Law, entry of the Recognition

Order is warranted because: (i) the JPLs are foreign representatives and (ii) the Verified Petition

satisfies all of the statutory requirements for recognition and related relief under chapter 15 of

the Bankruptcy Code as a foreign main proceeding.[6]

46.     First, the Debtor satisfies section 109(a) of the Bankruptcy Code, which is a

precondition for chapter 15 eligibility.  As explained in the Memorandum of Law, a debtor need

only have minimal "property" in the United States in order to comply with the terms of

section 109(a).  The Debtor easily satisfies this requirement given PBLA maintains two trust

accounts at The Bank of New York Mellon consisting of hundreds of millions of dollars in

investments, which trusts are located in this District.  Further, the Debtor holds loans, debt

instruments, preferred equity, and ordinary equity invested in privately held, special purpose

vehicles ("SPVs") and other related companies located in the United States.

47.     Second, the Chapter 15 Case was duly and properly commenced as required by

sections 1504 and 1509(a) of the Bankruptcy Code by filing the Verified Petition and all other

required documents in accordance with section 1515 of the Bankruptcy Code.

48.     Third, as described in the Frisby Declaration and the Memorandum of Law, the

JPLs qualify as a person or body, and each is a foreign representative within the meaning of

section 101(24) of the Bankruptcy Code, *i.e.*, the JPLs are authorized in the Bermuda Proceeding

to administer the Debtor's assets and affairs as determined by the Bermuda Court.  *See* Frisby

Declaration ¶¶ 36-39.

---

[6] Although the JPLs believe that the Bermuda Proceeding is undoubtedly a foreign main proceeding, the JPLs have requested, in the alternative, that the Bermuda Proceeding be recognized as a foreign nonmain proceeding out of an abundance of caution. The bases for recognizing the Bermuda Proceeding are set forth in the accompanying Frisby Declaration and Memorandum of Law, filed contemporaneously herewith.

17

49.     Fourth, the Bermuda Proceeding is pending in Bermuda, the Debtor's COMI.  As described in detail in the Memorandum of Law, Bermuda is the main situs of the Debtor's business operations, and this fact is readily apparent to third parties.  The Debtor clearly established Bermuda as its COMI well in advance of the Petition Date by centralizing its operations there.

50.     In the event that the Court concludes that the Debtor's COMI is not Bermuda, the Court should recognize the Bermuda Proceeding as a foreign nonmain proceeding.  A foreign nonmain proceeding takes place in a jurisdiction that is not the entity's center of main interests but where it has an "establishment," defined as "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. §§ 1502(2), (5).  As of the date of the filing of the Chapter 15 petition the Debtor had a place of business and personnel in Bermuda.  Thus, it is evident the Debtor has an establishment in Bermuda.

51.     As described in the Memorandum of Law and above, this Court's recognition of the Bermuda Proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding, and granting the relief requested herein pending a hearing on the Recognition Order-in addition to the relief automatically granted upon recognition pursuant to section 1520 of the Bankruptcy Code-is consistent with the purposes of chapter 15 of the Bankruptcy Code and with the public policy of the United States.  Therefore, the JPLs respectfully request that, upon notice and a hearing, the Court grant the Recognition Order and such other and further relief as the Court may deem just and proper.

52.     After their appointment, the JPLs conducted a review of the books and records of the Debtor and found multiple investments such as loans, debt instruments, preferred equity, and

18

ordinary equity invested in privately held, special purpose vehicles ("SPVs") and other related
companies which are located in the United States.

53.     As described in the Memorandum of Law, pursuant to section 1521 of the
Bankruptcy Code this Court has the discretion to order the turnover of the assets held
domestically in the United States to the JPLs.  Therefore, the JPLs respectfully request that, upon
recognition, the Court also order the turnover of such assets to the JPLs and provide that the JPLs
can administer the assets in accordance with the Bermuda Order, including but not limited to
distribution to creditors.

## NOTICE

54.     No trustee, examiner or statutory committee has been appointed in the Chapter 15
Case.  Notice of this Verified Petition has been provided to: (a) the United States Trustee for the
Southern District of New York, (b) Counsel for Plaintiffs in *Southland National Insurance
Corporation, et al. v. Greg E. Lindberg, et al.*: Wes J Camden, Esq., Williams Mullen; (c)
Counsel to Edward Mill Asset Management, LLC: Everett Gaskins Hancock, LLP, attn.: Michael
J. Byrne, Esq., (d) Counsel for Greg Lindberg and other Defendants in *Southland National
Insurance Corporation, et al. v. Greg E. Lindberg, et al*: Condon Tobin Sladek Thornton PLLC,
attn.: Jared Pace, Esq. and Aaron Z. Tobin, Esq. (e) Counsel for Universal Life Insurance
Company: Clyde & Co., attn.: Michael A. Knoerzer, Esq. (f) Cervantes Hodges Law Firm, (g)
BMX Holdings, LLC, (h) BMX Bermuda Holdings, Ltd., (i) PBX Holdings, LLC, (j) PBX
Bermuda Holdings, Ltd. (k) SunTrust Investment Services, Inc.,  (l) Counsel for claimants in
*Gustavo Ortega Trujillo and Priscilla Illingworth Ashton v. SunTrust Investment Services, Inc.,*
FINRA DR Arbitration No.20-02941, (m) all entities against whom provisional relief is being
sought under §1519 of the Code, (n) all other parties that request notice in this case pursuant to

19

Bankruptcy Rule 2002 prior to the date of such service and (o) all other parties that this Court may direct.

55.     Prior to the filing, Petitioners' counsel advised counsel in the ULICO Appeal, counsel in the NC Insurance Rehabilitation Action and counsel in the California Action of Petitioners' intent to file the Verified Petition and seek imposition of a stay.  The Petitioners submit that no other or further notice is necessary.

WHEREFORE, the Petitioners respectfully request (i) entry of the Recognition Order, substantially in the form attached hereto as Exhibit A and (iii) such other and further relief as the Court deems just and proper.

Dated: December 1, 2020
       New York, New York

STEVENS & LEE, P.C.

By:    */s/ Nicholas F. Kajon*
       Nicholas F. Kajon
       Constantine D. Pourakis
       Andreas D. Milliaressis
       485 Madison Avenue, 20th Floor
       New York, New York 10022
       Telephone:  212-319-8500
       Facsimile:  212-319-8505
       nfk@stevenslee.com
       cp@stevenslee.com

       *Counsel for the Petitioners Rachelle Frisby and
       John Johnston, in their capacity as Joint
       Provisional Liquidators and Proposed Foreign
       Representatives*

20

## VERIFICATION OF PETITION

Rachelle Frisby, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States of America as follows:

I am a Partner of Deloitte Ltd. and one of the duly appointed foreign representatives of the Debtor.  As such, I have full authority to verify the foregoing Verified Petition on behalf of the Debtor.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

Dated: December 1, 2020
       Hamilton, Bermuda

By: _____

    By:  Rachelle Frisby – Joint Provisional
    Liquidator
    Title:  Partner, Deloitte Ltd.
    Authorized Foreign Representative of the
    Debtor

21