# **Exhibit C**

Erie Properties, LLC Operating Agreement

# FIRST AMENDED AND RESTATED OPERATING AGREEMENT OF ERIE PROPERTIES, LLC

THIS FIRST AMENDED AND RESTATED OPERATING AGREEMENT of Erie Properties, LLC (the **"Company"**), a limited liability company organized pursuant to the Wyoming Limited Liability Company Act, is executed as of December 31, 2018. PBLA ULICO 2017 (**"Member"**) is the sole member of the Company. Solely for federal and state tax purposes and pursuant to Treasury Regulations Section 301.7701, the Member and the Company intend the Company to be disregarded as an entity that is separate from the Member. For all other purposes (including, without limitation, limited liability protection for the Member from Company liabilities), however, the Member and the Company intend the Company to be respected as a separate legal entity that is separate and apart from the Member.

This Agreement amends and restates in its entirety the Operating Agreement of the Company dated August 4, 2014 (the **"Original Agreement"**).

## RECITALS

WHEREAS, the previous member of the Company, Dunhill Holdings, LLC has contributed 100% of the membership interests of the Company to PBLA ULICO Reinsurance Trust; and

WHEREAS, the Member wishes to amend and restate the Original Agreement to reflect the current Member.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants herein contained and other valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Original Agreement is hereby amended and restated as set forth herein.

## ARTICLE I
## FORMATION OF THE COMPANY

1.1.   Formation. The Company was formed on August 4, 2014, upon the filing with the Secretary of State of the Articles of Organization of the Company.

1.2.   Name. The name of the Company is Erie Properties, LLC. The Member may change the name of the Company from time to time as it deems advisable, provided necessary filings under the Act are made.

1.3.   Registered Office and Registered Agent. The Company's registered office within the State of North Carolina and its registered agent at such address shall be as the Member may from time to lime deem necessary or advisable.

1.4.   Principal Place of Business. The principal place of business of the Company within or without the State of Wyoming shall be at such place or places as the Member may from time to time deem necessary or advisable.

1.5.   Purposes and Powers.

(a)   The purpose of the Company shall be to engage in any lawful business for which limited liability companies may be organized under the Act.

(b)   The Company shall have any and all powers which are necessary or desirable to carry out the purposes and business of the Company, to the extent the same may be legally exercised by limited liability companies under the Act.

1.6.   Term. The Company shall continue in existence until it is dissolved and its affairs wound up in accordance with the Act or this Agreement.

1.7.   Nature of Member's Interest. The interest of the sole Member in the Company shall be personal property for all purposes. The entire membership interest in the Company shall consist of 100 units of membership interest, in the name of The Bank of New York Mellon, not in its individual capacity but solely as Trustee of PBLA ULICO 2017. Legal title to all Company assets shall be held in the name of the Company.

## ARTICLE II
## DEFINITIONS

The following terms used in this Agreement shall have the following meanings (unless otherwise expressly provided herein):

**"Act"** means the Wyoming Limited Liability Company Act, as the same may be amended from time to time.

**"Agreement"** means this Operating Agreement, as amended from time to time.

**"Articles of Organization"** means the Articles of Organization of the Company filed with the Secretary of State, as amended or restated from time to time.

**"Code"** means the Internal Revenue Code of 1986, as amended from time to time (and any corresponding provisions of succeeding law).

**"Manager"** means the Person or Persons designated as manager pursuant to Section 3.1.

**"Member"** means The Bank of New York Mellon, not in its individual capacity but solely as Trustee of PBLA ULICO 2017.

**"Person"** means an individual, a trust, an estate, a domestic corporation, a foreign corporation, a professional corporation, a partnership, a limited partnership, a limited liability company, a foreign limited liability company, an unincorporated association, or another entity.

**"Property"** means (i) any and all property acquired by the Company, real and/or personal

(including, without limitation, intangible property); and (ii) any and all of the improvements constructed on any real property.

**"Secretary of State"** means the Secretary of State of the State of Wyoming.

**"Treasury Regulations"** means the Income Tax Regulations and Temporary Regulations promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

## ARTICLE III
## MANAGEMENT OF THE COMPANY

3.1 Management. The Member, by virtue of its status as the sole Member, shall designate the Manager or Managers of the Company for all purposes. The Member may, but need not, serve as a Manager. The Manager of the Company shall be Greg E. Lindberg. Except as otherwise expressly provided in this Agreement, the Articles of Organization or the Act, all decisions with respect to the management of the business and affairs of the Company shall be made by the Manager. The Manager may execute agreements on behalf of the Company utilizing such title (including, without limitation, "President") as the Manager may elect from time to time, the use of such title being sufficient evidence of such election.

3.2. Indemnification of Manager for Management Services. The Company shall indemnify the Manager or his authorized delegate(s) in connection with their services to the Company to the fullest extent permitted or required by the Act, as amended from time to time, and the Company may advance expenses incurred by such person upon the approval of the Manager (or the Member in the event of an advance to the Manager), upon the receipt by the Company of a signed statement agreeing to reimburse the Company for such advance in the event it is ultimately determined that the Manager is not entitled to be indemnified by the Company against such expenses.

## ARTICLE IV
## RIGHTS AND OBLIGATIONS OF MEMBER

4.1.    Removal and Designation of Manager. The Member may by written action, taken at any time for any or no reason, remove a Manager. The Member may replace a Manager due to such Manager's death, dissolution, resignation, removal, or otherwise by written action and the written consent of the successor Manager to serve as such.

4.2.    Limited Liability. The Member shall not be required to make any contribution to the capital of the Company, nor shall the Member in its capacity as such be bound by, or personally liable for, any expense, liability, or obligation of the Company except to the extent of its interest in the Company and the obligation to return distributions made to them under certain circumstances as required by the Act. The Member shall be under no obligation to restore a deficit capital account upon the dissolution or liquidation of the Company.

## ARTICLE V
## CAPITAL CONTRIBUTIONS

The initial capital contribution is as set forth on Schedule 1 attached hereto.

## ARTICLE VI

### ALLOCATIONS, ELECTIONS, AND REPORTS

All allocations of profit and loss of the Company and all assets and liabilities of the Company shall, solely for state and federal tax purposes, be treated as that of the Member pursuant to Treasury Regulations Section 301.7701, but for no other purpose (including, without limitation, limited liability protection for the Member from Company liabilities).

### ARTICLE VII
### DISTRIBUTIONS

Distributions of assets shall be made on such basis and at such time as determined by the Manager.

### ARTICLE VIII
### DISSOLUTION AND LIQUIDATION OF THE COMPANY

8.1.    Dissolution Events. The Company will be dissolved upon the happening of any of the following events:

(a)    All or substantially all of the assets of the Company are sold, exchanged, or otherwise transferred (unless the Member has elected to continue the business of the Company);

(b)    The Member signs a document stating its election to dissolve the Company;

(c)    The entry of a final judgment, order, or decree of a court of competent jurisdiction adjudicating the Company to be bankrupt and the expiration without appeal of the period, if any, allowed by applicable law in which to appeal; or

(d)    The entry of a decree of judicial dissolution or the administrative dissolution of the Company as provided in the Act.

8.2.    Liquidation.    Upon the happening of any of the events specified in Section 8.1 and, if applicable, the failure of the Member to continue the business of the Company, the Member, or any liquidating trustee designated by the Member, will commence as promptly as practicable to wind up the Company's affairs unless the Member or the liquidating trustee (either, the **"Liquidator"**) determines that an immediate liquidation of Company assets would cause undue loss to the Company, in which event the liquidation may be deferred for a time determined by the Liquidator to be appropriate. Assets of the Company may be liquidated or distributed in kind, as the Liquidator determines to be appropriate. The Member will continue to be entitled to Company cash flow and Company profits during the period of liquidation. The proceeds from liquidation of the Company and any Company assets that are not sold in connection with the liquidation will be applied in the following order of priority:

(a)    To payment of the debts and satisfaction of the other obligations of the Company, including, without limitation, debts and obligations to the Member;

(b)    To the establishment of any reserves deemed appropriate by the Liquidator for any liabilities or obligations of the Company, which reserves will be held for the purpose of paying liabilities or obligations and, at the expiration of a period the Liquidator deems appropriate, will be

distributed in the manner provided in Section 8.2(c); and, thereafter

    (c)    To the Member.

## ARTICLE IX
## MISCELLANEOUS

9.1. <u>Records</u>. The records of the Company will be maintained at the Company's principal place of business or at any other place the Member selects, provided the Company keeps at its principal place of business the records required by the Act to be maintained there.

9.2. <u>Survival of Rights</u>. Except as provided herein to the contrary, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.

9.3. <u>Interpretation and Governing Law</u>. When the context in which words are used in this Agreement indicates that such is the intent, words in the singular number shall include the plural and vice versa. The masculine gender shall include the feminine and neuter. The Article and Section headings or titles shall not define, limit, extend, or interpret the scope of this Agreement or any particular Article or Section. This Agreement shall be governed and construed in accordance with the laws of the State of North Carolina without giving effect to the conflicts of laws provisions thereof.

9.4. <u>Severability</u>. If any provision, sentence, phrase, or word of this Agreement or the application thereof to any person or circumstance shall be held invalid, the remainder of this Agreement, or the application of such provision, sentence, phrase, or word to Persons or circumstances, other than those as to which it is held invalid, shall not be affected thereby.

9.5. <u>Agreement in Counterparts</u>. This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

9.6. <u>Creditors Not Benefited</u>. Nothing in this Agreement is intended to benefit any creditor of the Company. No creditor of the Company will be entitled to require the Member to solicit or accept any loan or additional capital contribution for the Company or to enforce any right which the Company may have against a Member, whether arising under this Agreement or otherwise.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the undersigned, being the sole Member of the Company, has caused this Agreement to be duly adopted by the Company as of the date set forth on the cover page hereof, and the undersigned Manager hereby acknowledges the same.

**MEMBER**

PBLA ULICO 2017

By: The Bank of New York Mellon, not in its individual capacity but solely as Trustee of the Trust

By: _____
Name: _____Dionne Thomas_____
Title: _____Vice President_____

**MANAGER:**

_____
Greg E. Lindberg

## SCHEDULE 1

### Property Contributed to the Company by the Member

Working capital to support the acquisition of the Company's assets and the operations of the Company as shall be properly reflected as contributions to equity capital (but not as loans) on the books and records of the Company and the Member.