STEVENS & LEE
485 Madison Avenue, 20th Floor
New York, NY 10022
Telephone:  (212) 319-8500
Facsimile:  (212) 319-8505
Nicholas F. Kajon
Eric M. Robinson
Constantine D. Pourakis
Andreas D. Milliaressis
nicholas.kajon@stevenslee.com
eric.robinson@stevenslee.com
constantine.pourakis@stevenslee.com
andreas.milliaressis@stevenslee.com
*Counsel for Rachelle Frisby and*
*John Johnston, in their capacity as*
*Joint Provisional Liquidators and*
*Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PB LIFE AND ANNUITY CO., LTD., *et al.*,[1] | Case No. 20-12791 (LGB) |
| | (Jointly Administered) |
| Debtors in Foreign Proceedings. | |

**AMENDED MOTION OF THE JOINT PROVISIONAL LIQUIDATORS TO ENFORCE THE STAY AGAINST THE NC INSURANCE COMPANIES, REHABILITATORS AND LINDBERG ENTITIES WITH RESPECT TO THE AMENDED JUDGMENT AND ORDER AND IMPLEMENTATION OF THE MOU PURSUANT TO 11 U.S.C. §§ 362 AND 1520**

---

[1] PB Life and Annuity Co., Ltd., Northstar Financial Services (Bermuda) Ltd., Omnia Ltd. and PB Investment Holdings Ltd., foreign Debtors, are Bermuda limited companies which each have a registered address in Bermuda c/o Deloitte Ltd., Corner House, 20 Parliament Street, Hamilton HM 12, Bermuda, and are Jointly Administered for procedural purposes, by Order of this Court entered on April 2, 2021, ECF No. 42.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................2

BACKGROUND ...........................................................................................................4

    I.      Procedural History ............................................................................................4

    II.     The MOU and IALA.........................................................................................7

    III.    The NC MOU Action and the Amended Judgment and Order......................10

    IV.   The NC Insurance Companies And NC Defendants Had Knowledge Of The Stay Violations Before The JPLs Filed The Motion To Enforce The Stay ..........................13

REQUESTED RELIEF...............................................................................................17

JURISDICTION AND VENUE .................................................................................17

ARGUMENT ..............................................................................................................18

    I.      Acts to Enforce the Amended Judgment and Order and MOU Violate the Stay ..........18

       a.    Enforcement of the Amended Judgment and Order is a *Per Se* Violation of the Stay and Recognition Orders. .......................................................................................19

       b.    Enforcement of the MOU, a Prepetition Contract to which PBLA is a party, is a *Per Se* Violation of the Stay and Recognition Orders. ..............................................24

       c.    Enforcement of the Amended Judgment and Order would Undermine the Debtors' Right to Challenge the Validity and Enforceability of the MOU and IALA..........................25

       d.    Enforcement of the Amended Judgment and Order and MOU Would Permit the NC Insurance Companies to Exercise Dominion and Control over the Debtor Investments ....................................................................................................27

NO PRIOR REQUEST ..............................................................................................30

CONCLUSION............................................................................................................30

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.),* 835 F.2d 427, 431 (2d Cir. 1987) ........................................................................................................ 22, 27

*Acton Co., Inc. of Mass. V. Bachman Foods, Inc.*, 668 F.2d 76, 81–82 (1st Cir. 1982) ............... 20

*Begley v. Employment Security Comm.*, 274 S.E.2d 370, 375 (N.C. App 1981) ......................... 20

*Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (1993) ...................................... 26

*Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 305 (4th Cir. 1992) ........... 20

*FDIC v. Hirsch (In re Colonial Realty)*, 980 F.2d 125, 137 (2d Cir. 1992) ................................ 22

*G & S Bus. Servs., Inc. v. Fast Fare, Inc.*, 380 S.E.2d 792 (N.C. Ct. App. 1989) ...................... 21

*In re rought*, 307 B.R. 399, 404 (Bankr. S.D.N.Y. 2004) ............................................................. 22

*In re Albion Disposal, Inc.,* 217 B.R. 394, 407–08 (W.D.N.Y. 1997) .................................. 24, 25

*In re AMR Corp.*, 730 F.3d 88 (2d Cir. 2013) .............................................................................. 24

*In re Berau Capital Resources Pte Ltd.*, 540 B.R. 80, 83 (Bankr. S.D.N.Y. 2015) .................... 27

*In re Gen. Growth Props., Inc.*, 426 B.R. 71, 74 (Bankr. S.D.N.Y. 2010) .................................. 27

*In re Grinspan*, 597 B.R. 725, 735 (Bankr. E.D.N.Y. 2019) ........................................................ 22

*In re Manville Forest Prods. Corp.,* 43 B.R. 293, 298 (Bankr. S.D.N.Y. 1984) ......................... 24

*In re McLean Indus., Inc.*, 96 B.R. 440, 448 (Bankr. S.D.N.Y. 1989); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 532, 104 S. Ct. 1188, 79 L.Ed. 2d 482 (1984) .................................................. 25

*In re Qimonda AG Bankruptcy Litigation,* 433 B.R. 547 (E.D. Va. 2010) ................................. 25

*In re Qimonda AG*, 462 B.R. 165, 184 (Bankr. E.D. Va. 2011), *aff'd sub nom. Jaffe v. Samsung Elecs. Co.*, 737 F.3d 14 (4th Cir. 2013) ...................................................................................... 25

*In re Saint Vincent's Catholic Medical Centers of New York*, 449 B.R. 209, 217 (Bankr. S.D.N.Y. 2011) ............................................................................................................................................ 27

*In re Solutia Inc.,* 379 B.R. 473 (Bankr. S.D.N.Y. 2007) ............................................................ 24

*In re U.S. Steel Canada Inc.,* 571 B.R. 600, 609 (Bankr. S.D.N.Y. 2017) .................................. 26

*McCraw v. Aux*, 696 S.E.2d 739, 741 (N.C. Ct. App. 2010) ....................................................... 20

i

*N.C. Monroe Constr. Co. v. Guilford Cty. Bd. Of Educ.*, 180 S.E.2d 818, 822 (N.C. 1971) ...... 21

*Park E. Sales, LLC v. Clark-Langley, Inc.*, 651 S.E.2d 235, 242 (N.C. Ct. App. 2007) .............. 21

*Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 207 (2d Cir. 2014)........................................ 22

*Rexnord Holdings, Inc. v. Biderman*, 21 F.3d 522, 527 (2d Cir. 1994)........................................ 22

*Rice v. Randolph*, 384 S.E.2d 295, 297 (N.C. App. 1989) ........................................................... 21

*Story v. Walcott*, 240 N.C. 622 (1954)........................................................................................ 20

*U.S. Bank N.A. v. Am. Airlines, Inc.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013), *aff'd*, 730 F.3d
    88 (2d Cir. 2013)........................................................................................................................ 27

*U.S. Postal Serv. v. Dewey Freight Sys. Inc.*, 31 F.3d 620, 624 (8th Cir. 1994) ........................ 25

*White v. Pate*, 308 N.C. 759, 764, 304 S.E.2d 199, 202–03 (1983) ............................................ 21

*Williams v. City of Jacksonville Police Dept.*, 165 N.C. App. 587, 589, 599 S.E. 2d 422, 426 (2004)
    ...................................................................................................................................................... 26

## STATUTES

11 U.S.C. § 1501(a) ...................................................................................................................... 18

11 U.S.C. § 1520 (a)(1).............................................................................................................. 18, 26

11 U.S.C. § 362 (1) ....................................................................................................................... 18

11 U.S.C. § 362 (2) ....................................................................................................................... 18

11 U.S.C. § 362 (3) ....................................................................................................................... 18

11 U.S.C. § 362 (6) ....................................................................................................................... 18

11 U.S.C. § 541(a)(1)..................................................................................................................... 24

## TREATISES

Am. Jur. 2d, Specific Performance § 205 ..................................................................................... 20

*Amendments to the Debt Modification Rules – New Problems?*, 113 J. Tax'n 190, 192 (Fall 2010)
    ................................................................................................................................................. 9, 29

ii

Rachelle Frisby and John Johnston of Deloitte Ltd., in their capacities as the Joint Provisional Liquidators and authorized foreign representatives ("JPLs") for PB Life and Annuity Co., Ltd. ("PBLA"), Northstar Financial Services (Bermuda) Ltd. ("Northstar"), Omnia Ltd. ("Omnia") and PB Investment Holdings Ltd. ("PBIHL," together with PBLA, Northstar and Omnia, the "Debtors"), in liquidation proceedings currently pending before the Supreme Court of Bermuda (the "Bermuda Court"), Companies (Winding Up) Commercial Court, 2020:  No. 306, 304 and 305, and 441 respectively (the "Bermuda Proceedings"), by their counsel Stevens & Lee, P.C., respectfully submit this motion (the "Motion"), pursuant to Sections 362 and 1520 of Title 11 of the United States Code (the "Bankruptcy Code"), for entry of an Order (annexed hereto as **Exhibit A**):  (i) finding that any attempt to enforce the Amended Judgment and Order (defined below) violates the stay and Recognition Orders; (ii) finding that any attempt to implement the Memorandum Of Understanding (the "MOU") violates the stay and Recognition Orders; (iii) prohibiting the North Carolina ("NC") Insurance Companies and Lindberg Entities (both defined below) from taking any action to enforce the Amended Judgment and Order, including by transferring and assigning to New HoldCo ("NHC") the Lindberg Entities' equity and ownership interests in the Debtor Investment Counterparties (defined below) and/or Specified Affiliated Companies ("SACs"); (iv) prohibiting the NC Insurance Companies and Lindberg Entities from taking any action to implement the MOU, including, but not limited to, taking any actions against the Debtors, Debtor Investments or Debtor Investment Counterparties; (v) determining that, notwithstanding the fact that the Amended Judgment and Order specifically found that the MOU is "binding and enforceable," the rights of the JPLs and Debtors to challenge whether the MOU and IALA are binding, valid and enforceable are unaffected by the Amended Judgment and Order

1

and preserved; and (vi) granting such other relief as is just and proper, and respectfully represent to the Court as follows:

## PRELIMINARY STATEMENT

1.      The JPLs request the Court enter an Order prohibiting: (i) Colorado Bankers Life Insurance Company ("CBL"), Bankers Life Insurance Company ("BLIC"), Southland National Insurance Corporation ("SNIC") and Southland National Reinsurance Corporation ("SNRC," together with CBL, BLIC and SNIC, the "NC Insurance Companies"); (ii) Mike Dinius ("Dinius") and John Murphy ("Murphy") as Special Deputy Rehabilitators (the "Rehabilitators"); and (iii) Greg E. Lindberg ("Lindberg"), Global Growth Holdings, Inc. f/k/a Academy Association, Inc. ("Global Growth") and New England Capital ("NEC," together with Lindberg and Global Growth, the "NC Defendants"), and/or non-debtor entities affiliated with Greg E. Lindberg, Global Growth, and/or NEC (collectively with the NC Defendants, the "Lindberg Entities"), from attempting to enforce the Amended Judgment and Order, against any of the Debtors or the Debtors' investments in certain counterparties (the "Debtor Investment Counterparties,"[2] the investments themselves being "Debtor Investments"), or to implement the MOU against the Debtors, Debtor Investments or Debtor Investment Counterparties, in direct violation of the stay imposed under Bankruptcy Code Section 362 and the Recognition Orders of this Court, and further determining that the stay applies to the NC Insurance Companies, Rehabilitators, and Lindberg Entities in regard to enforcement of the Amended Judgment and Order and implementation of the MOU.

2.      As explained below, PBLA (if not all four Debtors) was a necessary party to the NC MOU Action under North Carolina law. Therefore, any attempt by the NC Insurance

---

[2] The Debtor Investment Counterparties include assets held in the PBLA ULICO Trust, defined below. Annexed hereto as **Exhibit B** is a list of the Debtor Investment Counterparties indicating which are known to be SACs.

Companies and/or Lindberg Entities to enforce the amended Judgment and Order (the "Amended Judgment and Order"),[3] entered on May 26, 2022 by the General Court of Justice, Superior Court Division (Wake County) (the "State Court") and/or implement the MOU, is a violation of the stay as a matter of law because it: (i) *per se*, requires the enforcement of a judgment against the Debtors; (ii) requires the implementation of a prepetition contract—the MOU—against the Debtors, all of whom were either severed (PBLA) or not joined (Northstar, Omnia and PBIHL) as necessary parties in the NC MOU Action; (iii) would have collateral estoppel or *res judicata* effect on the Debtors and thereby undermine the Debtors' right to challenge the validity and enforceability of the MOU and Interim Amendment to the Loan Agreements (the "IALA"); and (iv) would permit the NC Insurance Companies to exercise dominion and control over the Debtor Investments.

3.      Importantly, as explained below, enforcement of the amended Judgment and Order would have collateral estoppel or *res judicata* effect on the Debtors and thereby undermine the Debtors' right to challenge the validity and enforceability of the MOU and IALA. Moreover, if this Court does not enforce the stay imposed under Section 362 and the Recognition Orders, control of over five hundred (500) entities affecting at least seventy-five (75) Debtor Investments would be ceded to the NC Insurance Companies and Rehabilitators, allowing them to exert control over the Debtor Investments. *See* MOU Schedules & Ex. A.[4]

4.      On July 25, 2022, counsel for the JPLs sent a cease-and-desist letter to counsel for the NC Insurance Companies and counsel for the NC Defendants, demanding that the NC Insurance Companies and NC Defendants refrain from any and all actions to enforce the Amended

---

[3] Annexed hereto as **Exhibit C** is a true and correct copy of the Amended Judgment and Order.

[4] For example, on Schedule 1 (Senior Loans) PBLA is Lender and Epping, LLC is Borrower, and then Epping, LLC is listed as a SAC on page 8 of Exhibit A (SAC listing).

Judgment and Order and/or implement the MOU (the "Cease and Desist Letter").[5] Both the NC Insurance Companies and the NC Defendants refused to do so.

5.    To protect the Debtors and their respective creditors, the JPLs respectfully request that the Court grant this Motion enforcing the stay as set forth in Section 362 of the Bankruptcy Code and the Recognition Orders. As explained below, while there may be a host of factual disputes between the JPLs on the one hand and the parties to the NC MOU Action on the other hand, none of those factual disputes are implicated by this Motion. The facts relevant to this Motion really should not be subject to any legitimate dispute. The Court is simply faced with a legal issue as to whether enforcement of a judgment and a pre-petition contract violates the stay because it is of necessity the enforcement of a judgment and contract against debtors and would have collateral estoppel or *res judicata* effect on debtors.

## BACKGROUND

### I.    Procedural History

6.    Prior to the appointment of the JPLs, the Debtors were controlled by Lindberg and his senior decision makers including Christopher Herwig and Devin Solow.  *See Second Declaration of Rachelle Frisby in Support of the Supplemental Response to the Sur-Reply to Motion for a Further Order Compelling Turnover of Books and Records Including Attorney Files Pursuant to 11 U.S.C. §§ 105, 542, 1519 (a)(3), 1521(a)(4) & 1521(a)(7) [ECF No. 102], ¶ 16.* Lindberg and his senior decision makers caused the Debtors and the PBLA ULICO Trust[6] to

---

[5] Annexed hereto as **Exhibit D** is a true and correct copy of the Cease and Desist Letter.

[6] "PBLA ULICO Trust" means and refers to the trust created by the Coinsurance Reinsurance Agreement executed between PBLA, as Grantor, and Universal Life Insurance Company ("ULICO"), as beneficiary, on or about June 30, 2017 and the corresponding Reinsurance Trust Agreement and Comfort Trust Agreement executed contemporaneously; the Reinsurance Trust Agreement and Comfort Trust Agreement executed on or about February 16, 2018, whereby The Bank of New York Mellon, N.A. ("BNY") succeeded Wilmington Trust, N.A. ("Wilmington") as trustee; and the *Reinsurance Trust Agreement Resignation, Appointment, Acceptance, Assignment and Amendment Agreement* and the *Comfort Trust Agreement Resignation, Appointment, Acceptance, Assignment and*

4

collectively invest over $1 billion in over one hundred (100) illiquid and opaque closely held Lindberg affiliates, including investments held in trust. *Declaration of Rachelle Frisby Pursuant to 28 U.S.C. § 1746 and Statements and Lists Required By Bankruptcy Rule 1007(A)(4)* [ECF No. 4] (the "Frisby Recognition Declaration"), ¶ 17.

7.      Each of the Debtors are wholly-owned subsidiaries or affiliates of companies in which Lindberg is the sole beneficial owner.  PBLA, formed in 2017, and Omnia, acquired in 2017, are each wholly-owned by PBX Bermuda Holdings, Ltd., which is wholly-owned by PBX Holdings, LLC.  Lindberg holds 100% ownership interest in PBX Holdings, LLC.  Northstar and PBIHL, acquired in 2018 and 2017, respectively, are each wholly-owned by BMX Bermuda Holdings, Ltd., which is wholly-owned by BMX Holdings, LLC.  Lindberg holds 100% ownership interest in BMX Holdings, LLC.

8.      On or about October 3, 2018, the Bermuda Monetary Authority (the "BMA") was notified that the United States Department of Justice had launched an investigation into Lindberg. On March 18, 2019, Lindberg was indicted on charges of attempting to bribe the Commissioner of the North Carolina Department of Insurance, a public official.  Frisby Recognition Declaration, ¶ 15.

9.      Lindberg was tried in February 2020 and on March 5, 2020, a federal jury convicted Lindberg of conspiracy to commit honest services wire fraud and bribery concerning program received federal funds.  *Id*. ¶ 16. His conviction was recently reversed and his request for release from prison granted.

10.     On October 18, 2018, Mike Causey, the Commissioner of the North Carolina Department of Insurance (the "Commissioner"), entered a consent order placing four other

---

*Amendment Agreement* executed on or about December 29, 2020, whereby TMI Trust Company ("TMI") succeeded BNY as trustee.

Lindberg Entities, the NC Insurance Companies, into Administrative Supervision.  As more fully explained in Background Section II, *infra*, the ultimate results of the Commissioner's involvement with the NC Insurance Companies were an agreement to place the NC Insurance Companies in rehabilitation and enter into the MOU and IALA.

11.    Resulting liquidity and regulatory non-compliance issues caused the BMA to file petitions to wind up PBLA, Northstar and Omnia, and appoint the JPLs.  Subsequently, the JPLs, acting on behalf of Northstar, petitioned the Bermuda Court to wind up PBIHL.  The JPLs were appointed by separate Orders of the Supreme Court of Bermuda, three dated September 25, 2020 for PBLA, Omnia and Northstar, and one dated January 8, 2021 for PBIHL (the "Bermuda Orders"). Frisby Recognition Declaration, ¶¶ 39-40 (citing Exhibit A, the Bermuda Order for PBLA).[7,8] The Bermuda Orders grant to the JPLs broad and ongoing authority to undertake various actions as provided therein, facts previously presented to this Court without challenge from any party.  Bermuda Orders at ¶ 4.

12.    On December 3, 2020, the JPLs filed separate voluntary petitions under Chapter 15 on behalf of PBLA, Northstar and Omnia, and on April 15, 2021 on behalf of PBIHL, seeking recognition of the Bermuda Proceedings as foreign main proceedings (or, in the alternative, as

---

[7] *See also In re Northstar Financial Services (Bermuda) Ltd.*, Case No. 20-12792 (LGB) [ECF No. 4, at ¶¶ 48-49, citing Exhibit A]; *In re Omnia Ltd.*, Case No. 20-12793 (LGB) [ECF No. 8, at ¶¶ 37-38, citing Exhibit A]; and *In re PB Investment Holdings, Ltd.,* Case No. 21-10623 (LGB) [ECF No. 4 at ¶¶ 32-33, citing Exhibit A].

[8] On March 26, 2021, Northstar and Omnia were placed into liquidation.  On April 12, 2021, the JPLs submitted to the Bermuda Court Winding-Up Orders for each of Northstar and Omnia and await entry of these orders, whereby Rachelle Frisby and John Johnston will continue in their respective roles as the JPLs for Northstar and Omnia. *See Motion for a Further Order Compelling Turnover of Books and Records and Attorney Files Pursuant to 11 U.S.C. §§ 105, 542, 1519(a)(3), 1521 (a)(4) & 1521(a)(7)* (the "Motion to Compel") [ECF No. 47], ¶ 5.

foreign nonmain proceedings) [ECF Nos. 1 and 2],[9] and related relief under Bankruptcy Code Sections 1520 and 1521.

13.    On January 5, 2021, the Court entered an order granting recognition of the PBLA, Northstar and Omnia Bermuda Proceedings as foreign main proceedings and on May 4, 2021 the Court entered and order granting recognition of PBIHL (the "Recognition Orders") [ECF Nos. 33 and 50]. This Court approved the joint administration of the Debtors' cases [ECF Nos. 11 and 42].

14.    The Recognition Orders specifically provide that "[a]ll provision of section 1520 of the Bankruptcy Code apply in these Chapter 15 Cases, including, without limitation, the stay under section 362 of the Bankruptcy Code throughout the duration of these Chapter 15 Cases or until otherwise ordered by this Court." Recognition Orders, pg. 5, ¶ 3. The Recognition Orders further provide that "[w]ith respect to the [NC MOU Action, defined below], the stay imposed in this Order, including in paragraphs 3 and 4, shall not stay the [NC MOU Action] as against all parties to that action, except for the Debtors, and the plaintiffs in the [NC MOU Action] may proceed against all parties to that action, except for the Debtors; however, nothing that may occur in the [NC MOU Action] shall have any res judicata or collateral estoppel effect against any of the Debtors or the JPLs, and all rights of the Debtors and JPLs are expressly preserved." *Id.* at pg. 5, ¶ 6.

## II.    **The MOU and IALA**[10]

15.    On June 27, 2019, as part of the agreement to enter into the MOU, the Superior Court of North Carolina entered an order of rehabilitation pursuant to Article 30 of Chapter 58 of

---

[9] *See also In re Northstar Financial Services (Bermuda) Ltd.*, Case No. 20-12792 (LGB) [ECF Nos. 1 and 2], *In re Omnia Ltd.*, Case No. 20-12793 (LGB) [ECF Nos. 1 and 2], and *In re PB Investment Holdings, Ltd.*, Case No. 21-10623 (LGB) [ECF Nos. 1 and 2].

[10] Annexed hereto as **Exhibit E** is a true and correct copy of the redacted MOU and IALA, with the IALA starting on page 62.

the North Carolina General Statutes and appointed the Commissioner, as Rehabilitator for the NC Insurance Companies in the matter captioned *Causey v. Southland National Insurance Corporation, et al.*, 19-CV-8664 (Wake County Superior Court).

16.    The Commissioner appointed Dinius and Murphy as Rehabilitators.    Amended Judgment and Order, at ¶ 31.

17.    On June 27, 2019, the NC Insurance Companies and various Lindberg entities entered into two related contracts:  the MOU and the IALA.  Specifically, the following parties entered into the MOU:  (i) the NC Insurance Companies; (ii) Global Growth; (iii) all entities listed in Exhibit A to the MOU—the SACs; (iv) Edwards Mill Asset Management LLC, as holder of Special Purpose Vehicle ("SPV") common class A units ("EMAM"); (v) CBL, SNIC, NEC, and PBLA[11] as agents under the senior term loan agreement ("Agents");[12] and (vi) Lindberg, individually and as attorney-in-fact for the SACs and Agents.  Northstar, Omnia and PBIHL are not parties to the MOU or IALA, although all three are lenders and preferred equity holders whose respective interests were affected by the IALA and MOU.

18.    The MOU involved three steps. The first step was the execution of the IALA by the NC Insurance Companies, Lindberg, and the Lindberg Entities, and which became effective immediately upon execution.  See MOU, pg. 4, Article I, Interim Loan Amendment.  The IALA

---

[11] In addition to being an agent, PBLA provided credit facilities to certain affiliates of Academy Association, Inc. n/k/a Global Growth, in the amounts and pursuant to the agreements set forth in Schedule 5 to the MOU ("PBLA Loan Agreements").

[12] The Agents serve as agents: (i) under the senior term loan agreements in which lenders, including one or more of the NC Insurance Companies, and have extended credit facilities to certain of the SACs in the amounts and pursuant to the agreement set forth in Schedule 1 to the MOU ("Senior Debt"); (ii) under the subordinated debt arrangements in which lenders, including one or more of the NC Insurance Companies, have extended credit facilities to certain of the SACs in the amounts and pursuant to the agreement set forth in Schedule 2 to the MOU ("Junior Debt"); and (iii) under the preferred equity financing arrangements in which lenders, including one or more of the NC Insurance Companies, have provided equity financing to certain of the Specified Affiliated Companies in the amounts and pursuant to the agreements set forth in Schedule 3 to the MOU ("Preferred Equity").

modified numerous Debtor Investments in Lindberg affiliates with total outstanding principal and interest of $1,047,183,778.00, including deferral of interest payments, reduction of interest rates and extensions of maturities. See IALA, pgs. 2–4, ¶¶ 1–8, and Schedules A–E, and G. It is self-evident that deferrals of interest payments, reductions of interest rates and extensions of maturities of necessity reduce the value of the affected financial instruments. "But every modification of a debt instrument usually results in a decrease in its value, because the modification almost certainly will result in a decrease in the amount of interest or principal due, the timing of payments, or similar adjustments. Indeed, a debtor would not agree to a modification of a debt instrument that did not make the debt less onerous—and such modifications almost by definition will result in a reduction in the value of the debt instrument." *See Amendments to the Debt Modification Rules – New Problems?*, 113 J. TAX'N 190, 192 (Fall 2010) (hereinafter, "Financial Treatise").

19.    As a result, it is axiomatic that the IALA adversely affected the Debtor Investments. Whether such adverse modifications were or were not justified under the circumstances is not relevant to, and the Court need not consider any of them, to determine this Motion. As explained below, for purposes of this Motion, the only relevant fact, which cannot possibly be in dispute, is that the NC Insurance Companies, acting as agents for the Debtors on multiple loans, agreed to such adverse modifications.

20.    The second step involved, via performance of the MOU, a global restructuring of the SACs ("Global Restructuring"), which include Debtor Investment Counterparties. Specifically:

(1) all SACs were to become subsidiaries of a new parent company referred to as NHC, and NHC was to manage all its subsidiaries pursuant to management service agreements between NHC and each subsidiary as was deemed necessary;

(2) NHC would indemnify the NHC Board, and NHC directors and officers, and procure Directors & Officers Liability Insurance; and

(3)   companies not subject to the Global Restructuring (listed on Exhibit C to the MOU) would remain under Lindberg's control and management.

MOU, pgs. 4–8, Article II, Global Restructuring.

21.    In the third step, the MOU contemplated a restructuring and purported modification of all loans ("Global Loan Amendments"), including loans made by the Debtors and PBLA ULICO Trust. MOU, pgs. 8–10, Article III, Global Loan Amendments. As explained below, the Amended Judgment and Order found the Global Loan Amendments unenforceable.

22.    The JPLs intend to challenge the validity and enforceability of the MOU and IALA. Their right to do so must be preserved and cannot be jeopardized or impaired by the enforcement of the Amended Judgment and Order or specific performance of the MOU.  11 U.S.C. § 362(a).

## III.    <u>The NC MOU Action[13] and the Amended Judgment and Order</u>

23.    As a result of Lindberg's failure to meet the September 30, 2019 deadline to implement the MOU, the Rehabilitators commenced the NC MOU Action seeking, inter alia, enforcement of the MOU.  See Amended Judgment and Order, pg. 3, ¶ 11.

24.    A trial on the NC MOU Action was held before the Honorable A. Graham Shirley II between June 21, 2021 and June 30, 2021.  On May 18, 2022, the Judgment and Order was entered in the NC MOU Action ordering specific performance of the MOU (the "Judgment and Order").  On May 26, 2022, the Judgment and Order was amended (the "Amended Judgment and

---

[13] The "NC MOU Action" refers to the action styled as *Southland National Insurance Corporation in Rehabilitation, Bankers Life Insurance Company, in Rehabilitation, Colorado Bankers Life Insurance Company, in Rehabilitation, and Southland National Reinsurance Corporation, in Rehabilitation v. Greg E. Lindberg, Academy Association, Inc., Edwards Mill Asset Management, LLC, New England Capital, LLC and Private Bankers Life and Annuity Co., Ltd. a/k/a PB Life and Annuity Company, Ltd.*, Gen.  Court of Justice, Superior Court Division (Wake County), No. 19 CVS 013093.

Order"),[14] which required that the NC Defendants—the only remaining defendants since PBLA was severed and the matter as against EMAM was resolved by Consent Order—execute and deliver documents to NHC to transfer the SACs to NHC. See Amended Judgment and Order at pg. 42, ¶ 5; and see pg. 2, ¶¶ 3 and 4 with respect to PBLA and EMAM.[15]

25.    In their post-trial briefing, the Rehabilitators advised the NC MOU Action court that Debtor loans can be contributed to NHC without violating the automatic stay. *See Plaintiffs' Post-Trial Memorandum* filed on August 31, 2021 in the NC MOU Action, pg. 6-11, Section II; annexed hereto as **Exhibit F**. This may explain why Judge Shirley's Amended Judgment and Order does not distinguish between Debtor and non-Debtor assets despite specifically noting PBLA's severance from the action.

26.    The Amended Judgment and Order specifically found that: "The agreement between the parties set forth in the MOU is legally binding and enforceable." *Id*., pg. 41, ¶ 1.

27.    The Amended Judgment and Order specifically required, "[NC Defendants] shall execute and deliver or cause to be executed and delivered complete, valid and duly authorized and executed agreements, instruments, assignments and documentation in a form and substance acceptable to the majority of the NHC Board members to fully effectuate the transfer, assignment, and contribution to NHC of the [NC Defendants'] equity and ownership in the SACs, such that the SACs become subsidiaries, either directly or indirectly, of NHC within forty-five (45) days of the entry of this Order." *Id*., pg. 42, ¶ 5.

---

[14] By virtue of the Recognition Order and the commensurate stay of any litigation against PBLA (and the other Debtors), the North Carolina Court severed PBLA from the NC MOU Action. The Amended Judgment has no binding effect as to PBLA. *See* Amended Judgment and Order, pg. 2, ¶ 2; *and see* Judgment and Order, pg. 2, ¶ 2.

[15] *See* MOU at pg. 1, ¶ B, and Exhibit A to the MOU listing the SACs beginning on pg. 36.

28.     The Amended Judgment and Order further determined the Global Loan Amendments set forth in Article III of the MOU, were unenforceable and severable from the MOU, holding that the "validity of Article II [Global Restructuring] is not dependent upon Article III or the Global Loan Amendments." *Id*. at pg. 25, ¶ 133.  Judge Shirley opined that "the amendments and restructuring contemplated by the Global Loan Amendments should take place *after* the SACs are transferred to NHC," *id*. (emphasis in original), reasoning that since Article III leaves open the possibility of future negotiations and does not provide "a foundation of definite terms to create the loan, none of the terms in Article III may be enforced."  *Id*. at pg. 24, ¶131.

29.     Although the NC Defendants appealed the Amended Judgment and Order, the NC Defendants are required to execute and deliver any agreements necessary to effectuate the transfer of the SACs to NHC.  Doing so will inevitably leave the fate of the Debtor Investment Counterparties and, as a result, the Debtor Investments, in the hands of the NC Insurance Companies whose interests are of necessity not aligned with the interests of the Debtors, their policyholders and other creditors.

30.     Consistent with the Amended Judgment and Order, the MOU also imposes a new corporate structure under the holding company, NHC, which will be a wholly-owned subsidiary of Global Growth, overseeing five hundred and eleven (511) Lindberg affiliated entities including Debtor Investment Counterparties.  NHC's governance will be by a predetermined board ("NHC Board") which currently would not include any of the Debtors or the JPLs.  *Id.* at pg. 17, ¶¶ 83 and 85.

31.     This also includes the appointment of a Chief Restructuring Officer, Moshin Meghji of M-III Partners, LP, to continue to assist with the Global Restructuring.  *Id.* at pg. 17, ¶ 89.

12

32.    The Rehabilitators will have control over the SACs via NHC through the seven-person NHC Board, which includes Dinius and two other persons designated by Dinius.  There will also be two independent directors who will be elected by a majority of the NHC Board. Because the Rehabilitators will control the majority of non-independent NHC Board seats, they will of necessity control who the independent directors will be and thus, as a matter of law, will control the NHC Board.  *Id.* at pg. 17, ¶¶ 83 and 85 and pgs. 41-42, ¶¶ 2–5.

33.    The Amended Judgment and Order also requires that the NC Defendants transfer the Debtor Investment Counterparties and PBLA ULICO Trust investment counterparties, to the extent they are SACs, to NHC, which will be controlled by the Rehabilitators.

## IV.    The NC Insurance Companies And NC Defendants Had Knowledge Of The Stay Violations Before The JPLs Filed The Motion To Enforce The Stay

34.    On May 23, 2022, Lindberg, Global Growth and NEC filed a "Motion Regarding The Stay Pending Appeal" (the "NC Defendants' Stay Motion") proposing to execute and deliver to the North Carolina State Court Clerk, pending the appeal, the transfer documents required under the Judgment and Order, now the Amended Judgment and Order,[16] which includes transfer documents related to the Debtor Investment Counterparties.

35.    Despite the pending NC Defendants' Stay Motion, the NC Insurance Companies began actively attempting to enforce the Amended Judgment and Order as evidenced by their June 30, 2022 motion for an order to show cause to hold the NC Defendants in contempt for failure to bind the Directors and Officers Liability Insurance with respect to NHC.

---

[16] The Rehabilitators agreed that the Judgment and Order did not properly reflect the determination of the Court, and the NC Insurance Companies sought entry of the Amended Judgment and Order which removed one of the most concerning provisions from the Judgment and Order, which originally provided that NHC would become the borrower under the loans designated under the MOU including Debtor Investments.

09/20/2022 SL1 1803325v3 114825.00001

36.     On July 13, 2022, the NC Defendants filed the Emergency Motion for Relief from Automatic Stay and the Court's Recognition Order at ECF 33 (the "Stay Relief Motion") [ECF No. 294] seeking entry of an order granting relief from the stay and Recognition Orders,[17] allowing the NC Defendants to deposit the requisite transfer documents concerning the SACs in the State Court's registry while they pursue their appeal rights in the NC MOU Action.  The NC Defendants also filed draft sample transfer documents, subject to change. [ECF No. 300]

37.     The JPLs, ULICO and NC Insurance Companies each filed opposition to the Stay Relief Motion requesting that the Court deny the motion. [ECF Nos. 301, 302 and 303, respectively]

38.     After oral argument, the Court adjourned the Stay Relief Motion to first allow the State Court to rule on the pending NC Defendants' Stay Motion.

39.     In doing so, the Court observed that:

> When I read that judgment, the amended judgment, so I'm just going by the amended judgment, it seems to me that your issue is what's in **that judgment is contradictory.  Those are my words, not yours necessarily.  And that's how I'm interpreting the argument.  And the reason that I'm interpreting the argument that way is because obviously the judgment itself contains basically a provision saying that notwithstanding anything else herein, they're not running afoul of our injunction and our order on the recognition.  But I get what you're saying about the MOU and the IALA potentially being. . . [pre]petition agreements where the determination of this judgment may – if you read other parts of that amended judgment, you certainly could see that there's an argument that that's a problem if it were actually implemented, the amended judgment**.

Annexed hereto as **<u>Exhibit G</u>** are relevant excerpts of the July 20, 2022 Hearing Transcript (cited as "July 20 Tr. Pg:line"), Tr. 22:13 – 23:1 (emphasis added).

40.     The Court further stated:

---

[17] The NC Defendants erroneously excluded the PBIHL Recognition Order from their request for relief.

> **But the implementation and performance of that contract is going to
> impact adversely the debtors and their estate. . . . The stay issue is
> because they're a party to the contract, and it will impact the debtor's
> property and their rights.  It may be indirectly; sometimes that
> happens. I think directly, potentially with respect to the equity owners,
> the ones that they own preferred equity in. But I think that's the
> concern.**  That's my understanding of it. Maybe I'm misunderstanding it.
> **And the problem with proceeding with implementation of the MOU is,
> just what kind of impact might it have on the estate.  And you're saying
> none, and I'm not sure that's right.**

July 20 Tr. 43:13 to 45:6 (emphasis added).

41.     Following the July 20, 2022 Hearing, counsel for the JPLs sent counsel for the NC

Insurance Companies and counsel for the NC Defendants the Cease and Desist Letter, demanding

that the NC Insurance Companies and NC Defendants refrain from any and all actions to enforce

the Amended Judgment and Order and/or implement the MOU.  On July 27, 2022, counsel for the

JPLs emailed opposing counsel a copy of the July 20 Hearing transcript and highlighted the

excerpts quoted above.

42.     On July 28, 2022 and July 29, 2022, counsel for the NC Insurance Companies and

the NC Defendants, respectively, responded to the Cease and Desist Letter, refusing to comply

with the JPLs' request.  Annexed hereto as **<u>Exhibit H</u>** and **<u>Exhibit I</u>**, respectively, are true and

correct copies of the NC Insurance Companies and the NC Defendants responses.

43.     Despite this Court's cautionary observations at the July 20, 2022 Hearing and the

subsequent Cease and Desist Letter sent by the JPLs' counsel, on August 18, 2022, the NC

Insurance Companies filed a Motion for Injunctive Relief and For Expedited Ruling (the

"Injunctive Relief Motion") to begin specific performance of the Amended Judgement and Order

and the MOU, specifically, for the NC Defendants to bind Directors & Officers Liability Insurance

for NHC by August 25, 2022.  *See* Injunctive Relief Motion at pg. 7 (annexed hereto as **<u>Exhibit

J</u>**).

15

44.     The NC Insurance Companies claimed that the Directors & Officers Liability Insurance policy would lapse on August 25, 2022; the Injunctive Relief Motion was filed, per the NC Insurance Companies, to preserve the "status quo" and allow them to obtain the specific performance relief in the Amended Judgement and Order.  *See* Injunctive Relief Motion, at pgs. 11-13.  On August 22, 2022, the NC Defendants interposed their opposition to the Injunctive Relief Motion, annexed hereto as **Exhibit K**.

45.     By order dated August 24, 2022 (annexed hereto as **Exhibit L**), the North Carolina Court of Appeals dismissed without prejudice the NC Insurance Companies' Injunctive Relief Motion on procedural grounds.  Presumably, the NC Insurance Companies are free to cure those procedural defects and renew their motion.

46.     The NC Insurance Companies, by filing the Injunctive Relief Motion, ignored this Court's cautionary observations at the July 20, 2022 Hearing that the Amended Judgment and Order was inconsistent and appears to, in fact, implicate PBLA's and the other Debtors' interests in the assets adversely impacted by the MOU.  *See* July 20 Tr. 22:13-23:1 (the "… judgment is contradictory" and "the judgment itself contains basically a provision saying that notwithstanding anything else herein, they're not running afoul of our injunction and our order on the recognition. But I get what you're saying about the MOU and the IALA potentially being. . . [pre]petition agreements where the determination of this judgment may – if you read other parts of that amended judgment, you certainly could see that there's an argument that that's a problem if it were actually implemented, the amended judgment.").

47.     Confronted by the NC Insurance Companies' failure to abide by the Court's determinations and failure to heed the July 25, 2022 Cease and Desist Letter, the JPLs were left with no other option than to file this Motion.

16

**REQUESTED RELIEF**

48.    Pursuant to the Recognition Orders, and Sections 362 and 1520 of the Bankruptcy Code, the JPLs seek entry of an order:  (i) finding that any attempt to enforce the Amended Judgment and Order against the Debtors, Debtor Investments or Debtor Investment Counterparties violates the stay and Recognition Orders; (ii) finding that any attempt to implement the MOU as against the Debtors, Debtor Investments or Debtor Investment Counterparties violates the stay and Recognition Orders; (iii) prohibiting the NC Insurance Companies and Lindberg Entities from taking any action to enforce the Amended Judgment and Order, including by transferring and assigning to NHC the Lindberg Entities' equity and ownership interests in the Debtor Investment Counterparties and/or SACs; (iv) prohibiting the NC Insurance Companies and Lindberg Entities from taking any action to implement the MOU, including, but not limited to, taking any actions against the Debtors, Debtor Investments or Debtor Investment Counterparties; (v) determining that, notwithstanding the fact that the Amended Judgment and Order specifically found that the MOU is "binding and enforceable," the rights of the JPLs and Debtors to challenge whether the MOU and IALA are binding, valid and enforceable are unaffected by the Amended Judgment and Order and preserved; and (vi) granting such other relief as is just and proper.

**JURISDICTION AND VENUE**

49.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Bankruptcy Code Section 1501.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

50.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1410.

51.    The statutory predicate for the requested relief is 11 U.S.C. §§ 362 and 1520.

## ARGUMENT

### I.    Acts to Enforce the Amended Judgment and Order and MOU Violate the Stay

52.    The relief requested is critical to ensuring that the JPLs can properly administer their duties in Bermuda.  The relief requested serves as an "effective mechanism" to implement the Chapter 15 policies of promoting cooperation between courts of the United States and courts "of foreign countries involved in cross-border insolvency cases," as it will promote the "fair and efficient administration of cross border insolvencies that protects the interests of all creditors and other interested entities," including the Debtors; and the "protection and maximization of the value of the [Debtors'] assets," as intended by Section 1501.  See 11 U.S.C. § 1501(a).

53.    Section 362 is made applicable by the Recognition Orders and by Section 1520 of the Bankruptcy Code, which provides "[u]pon recognition of a foreign proceeding that is a foreign main proceeding—Sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." *See* 11 U.S.C. § 1520 (a)(1). Pursuant to 362(a) the following will be considered a violation of the automatic stay:

(1)    the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2)    the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3)    any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
.  .  .

(6)    any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362 (1), (2), (3) and (6), respectively.

18

54.    Any attempt by the NC Insurance Companies and/or Lindberg Entities to enforce the Amended Judgment and Order and/or implement the MOU, is a violation of the stay and Recognition Orders as a matter of law in that it:  (a) *per se*, requires the enforcement of a judgment against the Debtors; (b) requires the implementation and enforcement of a prepetition contract— the MOU—against the Debtors, all of whom were either severed (PBLA) or not joined (Northstar, Omnia and PBIHL) as necessary parties in the NC MOU Action; (c) would have collateral estoppel or *res judicata* effect on the Debtors and thereby undermine the Debtors' right to challenge the validity and enforceability of the MOU and IALA; and (d) permits the NC Insurance Companies to exercise dominion and control over the Debtor Investments.

55.    The JPLs respectfully submit that, while there may be a host of factual disputes between them on the one hand and the parties to the NC MOU Action on the other hand, none of those factual disputes are implicated by this Motion. The facts relevant to this Motion really should not be subject to any legitimate dispute. The Court is simply faced with a legal issue as to whether enforcement of a judgment and a pre-petition contract violates the stay because it is of necessity the enforcement of a judgment and contract against debtors and would have collateral estoppel or *res judicata* effect on debtors.

### a. Enforcement of the Amended Judgment and Order is a *Per Se* Violation of the Stay and Recognition Orders.

56.    PBLA was a party to the MOU.  Thus, it was clearly a necessary party to any litigation concerning the MOU, and in fact it was sued by the NC Insurance Companies for specific performance of the MOU, damages, and other relief.  The other Debtors were likely also necessary parties because their rights were affected by the MOU.  Therefore, any attempt to enforce the Amended Judgment and Order violates the stay because, of necessity, it is being enforced against PBLA, if not all four Debtors.  North Carolina law is strict on joinder of necessary parties.

19

Necessary parties must be joined in an action and a necessary party is one whose presence is required for a complete determination of the claim, "and is one whose interest is such that no decree can be rendered without affecting the party," and "one whose interest will be directly affected by the outcome of the litigation." *McCraw v. Aux*, 696 S.E.2d 739, 741 (N.C. Ct. App. 2010) (quoting *Begley v. Employment Security Comm.*, 274 S.E.2d 370, 375 (N.C. App. 1981)).

57.    The North Carolina Supreme Court made clear in *Story v. Walcott*, 240 N.C. 622 (1954) that a necessary party would be joined in a suit for specific performance, holding "[w]here complete determination of grantor's suit for specific performance of grantee's agreement to give grantor first option to purchase could not be reached without joinder of state, which had contracted to purchase from grantee, as a party to action, judgment sustaining demurrer to complaint was vacated to give state opportunity to become party." The Fourth Circuit has likewise held that "[t]he cases are virtually unanimous in holding that in suits between parties to a contract seeking rescission of that contract, all parties to the contract, and others having a substantial interest in it, are necessary parties." *Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 305 (4th Cir. 1992) (citing *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 81–82 (1st Cir. 1982)).

58.    "The fundamental rule that all persons whose rights will be directly affected by a decree in equity must, if within the jurisdiction of the court and legally capable of suing or being sued, be joined as parties plaintiff or defendant in order that complete justice may be done and that there may be a final determination of the rights of all parties interested in the subject matter of the controversy governs the question of parties in suits for specific performance." Am. Jur. 2d, Specific Performance § 205. "All persons interested in the contract or the property involved in the suit, or whose interests therein may be affected by the decree, are necessary parties and should be

made parties to the specific performance suit—otherwise, the court ordinarily will not enter a decree of specific performance." *Id*. "All parties to the contract and those materially interested in its enforcement are necessary parties." *Id*.

59.    "When the absence of a necessary party is disclosed, the trial court should refuse to deal with the merits of the action until the necessary party is brought into the action." *White v. Pate*, 308 N.C. 759, 764, 304 S.E.2d 199, 202–03 (N.C. 1983); *see also G & S Bus. Servs., Inc. v. Fast Fare, Inc.*, 380 S.E.2d 792 (N.C. Ct. App. 1989) (dismissing action where plaintiff failed to secure the bankruptcy court's permission to join necessary party, then in bankruptcy and subject to an automatic stay); *Park E. Sales, LLC v. Clark-Langley, Inc.*, 651 S.E.2d 235, 242 (N.C. Ct. App. 2007) ("Although the bankruptcy filing created a stay with respect only to Clark and none of the other parties to the action, Clark's inability to litigate in a forum other than bankruptcy court affects the other parties whose claims depend on amounts owed to and owing from Clark.").

60.    A judgment which is determinative of a claim arising in an action where necessary parties have not been joined, is "null and void." *Rice v. Randolph*, 384 S.E.2d 295, 297 (N.C. App. 1989) (holding that, in a dispute as to the extinguishment of a subdivision easement, the grantor, or his heirs, who retain fee title to the soil must be joined); *see also N.C. Monroe Constr. Co. v. Guilford Cty. Bd. Of Educ.*, 180 S.E.2d 818, 822 (N.C. 1971) (vacating declaratory judgment invalidating award of construction contract because party awarded contract was a necessary party to declare its contract with the defendant invalid and the court below could not have properly determined the validity of that contract without making them a party).

61.    Based on the foregoing, as a party to the MOU, PBLA was obviously a necessary party to the NC MOU Action, and just as obviously that is why the NC Insurance Companies named PBLA as a defendant therein.  Moreover, under North Carolina law, the other three Debtors

21

also should have been named as necessary parties because their assets and rights would be affected by specific performance of the MOU, as they are now being affected.

62.     Although the Amended Judgment and Order notes the severance of PBLA as a party to the action,[18] any attempt to enforce the MOU pursuant to the Amended Judgment and Order would invariably impose requirements on PBLA in violation of the stay, specifically Section 362(a)(1) & (2) which prohibit continuation of a prepetition action and enforcement of a judgment.  As a result, any attempt to enforce the Amended Judgment and Order against the Debtors or Debtor Investments is void and without vitality under the stay.  *See Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 207 (2d Cir. 2014) ("[S]o central is the § 362 stay to an orderly bankruptcy process that actions taken in violation of the stay are void and without effect.") (quoting *FDIC v. Hirsch (In re Colonial Realty)*, 980 F.2d 125, 137 (2d Cir. 1992)); *Rexnord Holdings, Inc. v. Biderman*, 21 F.3d 522, 527 (2d Cir. 1994) ("[A]ny proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect.") (citing *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987)); *In re 22rought*, 307 B.R. 399, 404 (Bankr. S.D.N.Y. 2004) (finding that the act of signing a judgment after the petition date constituted the continuation of a judicial proceeding, violated the automatic stay and rendered the action void *ab initio*, absent relief from the automatic stay and finding that the plaintiff willfully violated the stay by not taking affirmative action to vacate the judgment); *In re Grinspan*, 597 B.R. 725, 735 (Bankr. E.D.N.Y. 2019).

63.     Therefore, this Court should determine that, notwithstanding the fact that the Amended Judgment and Order specifically found that the MOU is "binding and enforceable," the

---

[18] It is axiomatic that PBLA had no obligation to participate in the NC MOU action; that is the purpose of the automatic stay.

rights of the JPLs and Debtors to challenge whether the MOU and IALA are binding, valid and enforceable are unaffected by the Amended Judgment and Order and preserved.

64.    Based on the foregoing, <u>any</u> steps to enforce the Amended Judgment and Order would violate the stay and the Recognition Orders.

65.    While the Rehabilitators *may* have been entitled to seek a judgment for damages against Lindberg and the non-Debtor NC Defendants, they cannot enforce a judgment for specific performance of a prepetition contract that implicates and prejudices the rights of the Debtors. *See* 11 U.S.C. § 362(a)(1) and (2). However, even seeking damages may be problematic because the NC Insurance Companies sued all defendants, including PBLA, jointly and severally for damages for breach of contract. As a result, any award of damages would hinge on a finding that the parties, including PBLA, breached the MOU by failing to close, which obviously would violate the Recognition Orders.

66.    It is noteworthy that the NC Insurance Companies (unlike Lindberg) never sought stay relief from this Court. Instead, the NC Insurance Companies have been resorting to self-help in the North Carolina state Courts by, *inter alia*, (a) filing a motion before the State Court on June 30, 2022 seeking to hold the NC Defendants in contempt for failing to bind Directors and Officers Liability Insurance for NHC as required under the Amended Judgment and Order, and (b) filing the Injunctive Relief Motion concerning Directors and Officers Liability Insurance for NHC on August 18, 2022, <u>after</u> this Court's cautionary observations at the July 20, 2022 Hearing and the subsequent Cease and Desist Letter sent by the JPLs' counsel.

### b.    Enforcement of the MOU, a Prepetition Contract to which PBLA is a Party, is a *Per Se* Violation of the Stay and Recognition Orders.

67.    Similarly, any attempt to enforce the MOU, a prepetition contract to which PBLA is a party and which affects the assets and rights of all four Debtors, is an independent *per se* stay violation.

68.    The United States Court of Appeals for the Second Circuit made this clear in *In re AMR Corp.*, 730 F.3d 88 (2d Cir. 2013). The court in *AMR Corp.* affirmed the bankruptcy court's denial of the lender's lift stay motion, finding that "[a]s of the filing of its bankruptcy petition on November 29, 2011, [the debtor] had the contractual right, pursuant to the Indentures, to repay its accelerated debt without Make–Whole Amount.  We therefore agree with the bankruptcy court that any attempt by [the lender] to rescind acceleration now—after the automatic stay has taken effect—is an effort to affect [the debtor's] contract rights, and thus the property of the estate." *AMR Corp.*, at 102–03 (citing 11 U.S.C. § 541(a)(1)); *see also In re Albion Disposal, Inc.*, 217 B.R. 394, 407–08 (W.D.N.Y. 1997) (finding "(1) that a debtor's contractual rights—including rights arising under post-petition contracts—are included in the property of his estate and (2) that an attempt to terminate those rights is an act to exercise control over property of the debtor's estate."); *In re Solutia Inc.*, 379 B.R. 473 (Bankr. S.D.N.Y. 2007) (finding that holders of the senior secured notes could not deaccelerate the automatic acceleration of the maturity date of notes, which occurred pursuant to the trust indenture upon the bankruptcy filing, in violation of the automatic stay); and *In re Manville Forest Prods. Corp.*, 43 B.R. 293, 298 (Bankr. S.D.N.Y. 1984) (determining "in the case at bar it was unnecessary, and indeed would have violated the stay, for the long-term lenders to take overt steps to accelerate the debt without first seeking a modification of the stay from this Court").

24

69.    Here, the enforcement of the MOU—a prepetition contract[19]—against the Debtors and Debtor Investments is void and without vitality under the stay and would contravene the Recognition Orders' decree that the NC MOU Action shall have no collateral estoppel or *res judicata* effect on PBLA. *See In re Albion Disposal, Inc.*, 217 B.R. at 408 (finding that the debtor's estoppel rights could be property of the estate and subject to the protections afforded by the automatic stay such that seeking to terminate those rights would violate the stay).

70.    Such action to enforce the MOU is in direct violation of Section 362(a)(3) of the Bankruptcy Code and the Recognition Orders.  While the Rehabilitators *may* be entitled to a judgment for damages against Lindberg and the non-Debtor NC Defendants, they cannot enforce a pre-petition contract that implicates and prejudices the rights of the Debtors.

71.    Based on the foregoing, <u>any</u> steps to implement the MOU, a pre-petition contract to which PBLA is a party, would violate the stay and the Recognition Orders.

### c. Enforcement of the Amended Judgment and Order would Undermine the Debtors' Right to Challenge the Validity and Enforceability of the MOU and IALA.

72.    The JPLs intend to seek a judicial determination that the MOU and IALA are not valid, binding, effective, or enforceable as to the Debtors. Pursuant to Section 108 of the Bankruptcy Code, the JPLs have until January 5, 2023 to assert any such claims. The automatic stay prevents any party, including the parties to the NC MOU Action, from interfering with or impairing the JPLs' right to contest the validity and enforceability of the MOU and IALA.

---

[19] If the Court determines that the MOU is an executory contract, it is within the Court's discretion to apply Section 365 of the Bankruptcy Code to protect the Debtors' estates which would prohibit the enforcement of the MOU against the Debtors until the MOU is assumed by the JPLs.  *See In re Qimonda AG*, 462 B.R. 165, 184 (Bankr. E.D. Va. 2011), *aff'd sub nom. Jaffe v. Samsung Elecs. Co.*, 737 F.3d 14 (4th Cir. 2013) (citing *In re Qimonda AG Bankruptcy Litigation*, 433 B.R. 547 (E.D. Va. 2010)) (determining the discretionary applicability of Section 365 in Chapter 15 cases); *and see U.S. Postal Serv. v. Dewey Freight Sys.  Inc.*, 31 F.3d 620, 624 (8th Cir. 1994) ("before executory contracts are assumed or rejected under § 365(a), those contracts remain in existence, *enforceable by the debtor but not against the debtor*.") (emphasis in original)); *In re McLean Indus., Inc.*, 96 B.R. 440, 448 (Bankr. S.D.N.Y. 1989); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 532, 104 S. Ct. 1188, 79 L.Ed. 2d 482 (1984).

25

73.     However, enforcement of the Amended Judgment and Order, which specifically found that "the MOU is legally binding and enforceable," Exhibit C, pg. 41, ¶ 1, may have *res judicata* or collateral estoppel effect on that very issue, thereby undermining the Debtors' litigation claims in direct contravention of the Recognition Orders. *See Williams v. City of Jacksonville Police Dept.*, 165 N.C. App. 587, 589, 599 S.E. 2d 422, 426 (N.C. Ct. App. 2004) (quoting *Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (N.C. 1993)) ("Under the doctrine of res judicata, a final judgment on the merits in a prior action in a court of competent jurisdiction precludes a second suit involving the same claim between the same parties or those in privity with them.").

74.     Further, when the second action is between two parties upon the same claim or its opposite, the prior judgment serves as a bar to the relitigation of all matters that were or should have been adjudicated in the prior action. When the second action is between the same parties upon a different claim, the prior judgment serves as a bar only as to issues actually litigated and determined in the original action. *Id*. at 591, 427. Thus, given the fact that the Amended Judgment and Order specifically found that the MOU is "binding and enforceable," enforcement of such judgment would seemingly preclude the Debtors from seeking to adjudicate that the very same document is unenforceable.

75.     Given that this is a Chapter 15 case, there is no "property of the debtor's estate" under Section 541. While Section 1520(a)(1) specifically refers to "property of the debtor" and not "property of the estate," the automatic stay pursuant to Section 362 is imposed as it relates to enforcement actions with respect to the debtor and the property of the debtor. *See In re U.S. Steel Canada Inc.*, 571 B.R. 600, 609 (Bankr. S.D.N.Y. 2017). The automatic stay is not limited solely to actions against the debtor, but rather "bars actions against [sic] even against third parties that

26

would have an adverse impact on the property of the estate." *See In re Saint Vincent's Catholic Medical Centers of New York*, 449 B.R. 209, 217 (Bankr. S.D.N.Y. 2011) (citing *In re 48th Street Steakhouse*, 835 F.2d 427 (2d Cir. 1987) (the future causes of action of the Debtor are property of the estate and any action taken by third parties that impaired such causes of actions are barred by the automatic stay); *see also In re Gen. Growth Props., Inc.*, 426 B.R. 71, 74 (Bankr. S.D.N.Y. 2010) (staying action by non-debtor against third party because plaintiff "cannot use judicial processes outside of the bankruptcy court to interfere with the administration of a bankruptcy case.").

76.    The contract rights of a Chapter 15 debtor are included in what constitutes "property of the debtor." *In re Berau Capital Resources Pte Ltd.*, 540 B.R. 80, 83 (Bankr. S.D.N.Y. 2015); *see also U.S. Bank N.A. v. Am. Airlines, Inc.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013), *aff'd*, 730 F.3d 88 (2d Cir. 2013) ("Contracts create property rights for the parties to the contract. A debtor's contract rights are intangible property of the debtor."). Likewise, litigation claims arising under a debtor's contracts are contract rights in and of themselves, and any actions taken to further impair the same would be barred, just like that in a similarly situated Chapter 11 case.

77.    Based on the foregoing, the rights of the JPLs to challenge the validity and enforceability of the MOU and IALA are rights protected by the stay and Recognition Orders, and cannot be jeopardized or impaired by enforcement of the Amended Judgment and Order.

**d. Enforcement of the Amended Judgment and Order and MOU Would Permit the NC Insurance Companies to Exercise Dominion and Control over the Debtor Investments**

78.    At the September 6, 2022 hearing, the Court inquired as to how the situation would change if the MOU is implemented in that the JPLs are currently not in control of the SACs and will not be in control of the SACs after implementation of the MOU. The JPLs respectfully submit

27

that their motivations in seeking enforcement of the stay are irrelevant to whether the Amended Judgment and Order violates the stay.

79.    Nevertheless, besides the concerns discussed above over *res judicata* or collateral estoppel effect vis-à-vis the litigation claims that the JPLs intend to be bring in the next few months, the JPLs are concerned with allowing the NC Insurance Companies to have absolute power and control over the SACs because that would provide the NC Insurance Companies with: (1) the unfettered right to modify terms of Debtor Investments, and (2) control over Debtor Investment Counterparties, subsequent transferees, pass-through vehicles and operating companies into which the Debtors' funds disappeared.

80.    Currently, the NC Insurance Companies are agents for the Debtors on at least 29 loans.[20] As a result, the NC Insurance Companies currently have the ability to amend the terms of these Debtor Investments, but only if they can obtain the agreement of borrowers currently under the control of Global Growth.[21]

81.    However, if the SACs are transferred to NHC, then as a matter of law the NC Insurance Companies will have control over both the agent and borrowers with respect to at least 29 Debtor loans, and thus would appear to have the unfettered unilateral ability to modify such loans. These modifications may or may not be adverse to the Debtors, but the JPLs as fiduciaries cannot run the risk that the NC Insurance Companies will act in the Debtors' best interest, as

---

[20] *NC Insurance Companies' Objection to the Asset Sale Procedures Motion* [ECF No. 181 at pg. 13, ¶ 16] ("with respect to PBLA's loans listed on Exhibit B, one of the NC Insurance companies serves as agent on six of the loans and the agent's consent is required to sell each of those loans.  Similarly, the NC Insurance Companies are the agent for fourteen (14) of the loans where Northstar is a lender and are an agent and a co-lender for nine (9) separate loans where Northstar is a lender. In addition to the co-lender relationship on nine loans, one of the NC Insurance Companies has another and separate loans to another six of Northstar's borrowers listed on Exhibit B. Thus, the NC Insurance Companies are an agent with consent rights with respect to at least 29 of the Debtors' loan Assets.").

[21] See e.g. the Ephesus Asset Management Loan with Ephesus Asset Management as Borrower, CBL as Agent and CBL and SNIC as Lenders (annexed hereto as **Exhibit M**).

opposed to their own interests. This is especially the case where the NC Insurance Companies, in their capacities as the Debtors' agents, previously agreed to numerous loan modifications under the IALA that adversely affected the Debtors' investments. *See* Financial Treatise, *supra*. That issue is not yet before this Court, but it underscores the JPLs' concern that they need to take steps to prevent another opportunity for the investments owned by their Debtors to be adversely modified.

82.    Moreover, the NC Insurance Companies have admitted that the Debtors' investments in counterparties were transferred through multiple layers of Lindberg entities before winding up at operating companies controlled by Lindberg. "These Affiliated Entities consist of Operating Companies and holding companies, special purpose vehicles and trusts, formed and incorporated in North Carolina, other states and overseas, which created a complex network of interrelated loans, financing arrangements and investments. The Affiliated Entities have credit exposure of at least $2.1 billion. Of that amount, the NC Insurance Companies hold approximately $1.25 billion of the obligations. Through many layers of holding and pass-through companies, Lindberg ultimately owns the controlling interests, as well as the economic interests, in these non-insurance Operating Companies. … PBLA similarly has substantial direct and indirect investments into the Affiliated Entities. PBLA is holding direct investments in 53 of the Affiliated Entities, including many pass-through entities, which in turn hold 158 investments, including investments in another 78 unique Affiliated Entities, many of which are pass-through entities holding one hundred 124 investments in another 27 unique Affiliated Entities, including two Affiliated Entities with $269 million due from Lindberg or entities used by him to fund personal expenses." *See* NC Insurance Companies' Objection to the Asset Sale Procedures Motion. [ECF No. 181 at ¶¶ 8–10]

83.     The SACs comprise these operating companies as well as the pass-through vehicles, through which the NC Insurance Companies admit the Debtors' Investments flowed. *See* MOU, Exhibit A [Specified Affiliated Companies]. As a result, if the SACs are transferred to NHC, then the NC Insurance Companies will not only be able to unilaterally modify multiple Debtor loans, but they will also be in control of the companies through which over $600 million of the Debtors' assets disappeared (not counting assets emanating from the PBLA ULICO Trust). Court appointed fiduciaries such as the JPLs cannot allow themselves to be put in a position where any other party, especially parties who have previously agreed to adversely modify the Debtor Investments, would have total control over the Debtor Investment Counterparties and subsequent transferees of the Debtors' so-called "investments." Section 362(a) is not so meaningless, and a contrary finding would render it so.

## NO PRIOR REQUEST

84.     No prior request for the relief requested herein has been made to this or any other court, other than the original motion filed by the JPLs on August 26, 2022. [ECF No. 317]

## CONCLUSION

85.     Based on the foregoing, the JPLs respectfully request that the Court enter an Order, in the form annexed hereto as **Exhibit A**, pursuant to 11 U.S.C. §§ 362 and 1520, and the Recognition Orders: (i) finding that any attempt to enforce the Amended Judgment and Order against the Debtors, Debtor Investments or Debtor Investment Counterparties violates the stay and Recognition Orders; (ii) finding that any attempt to implement the MOU against the Debtors, Debtor Investments or Debtor Investment Counterparties violates the stay and Recognition Orders; (iii) prohibiting the NC Insurance Companies and Lindberg Entities from taking any action to enforce the Amended Judgment and Order, including by transferring and assigning to NHC the Lindberg Entities' equity and ownership interests in the Debtor Investment Counterparties and/or

09/20/2022 SL1 1803325v3 114825.00001

SACs; (iv) prohibiting the NC Insurance Companies and Lindberg Entities from taking any action to implement the MOU, including, but not limited to, taking any actions against the Debtors, Debtor Investments or Debtor Investment Counterparties; (v) determining that, notwithstanding the fact that the Amended Judgment and Order specifically found that the MOU is "binding and enforceable," the rights of the JPLs and Debtors to challenge whether the MOU and IALA are binding, valid and enforceable are unaffected by the Amended Judgment and Order and preserved; and (vi) granting such other relief as is just and proper.

Dated: September 20, 2022
New York, New York

STEVENS & LEE, P.C.

By:    */s/ Nicholas F. Kajon*
       Nicholas F. Kajon
       Eric M. Robinson
       Constantine D. Pourakis
       Andreas D. Milliaressis
       485 Madison Avenue, 20th Floor
       New York, New York 10022
       Telephone:  212-319-8500
       Facsimile:  212-319-8505
       nicholas.kajon@stevenslee.com
       eric.robinson@stevenslee.com
       constantine.pourakis@stevenslee.com
       andreas.milliaressis@stevenslee.com

*Counsel for Rachelle Frisby and
John Johnston, in their capacity as
Joint Provisional Liquidators and
Foreign Representatives*

31